Gary L. Eastman, Esq. (CSB #182518)
Eastman IP
401 West A Street, Suite 1785
San Diego, CA 92101
(619) 230-1144
Attorney for Plaintiff
KRZYSZTOF SYWULA

**'21 CV 1450 BAS AGS**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRZYSZTOF SYWULA, an individual<br><br>Plaintiff,<br><br>v.<br><br>Alexis DaCosta, an individual; Vincent Coletti, an individual; TELEPORT MOBILITY, INC., a Nevada corporation; and DOES 1-20, inclusive,<br><br>Defendants. | COMPLAINT FOR:<br><br>(1) CORRECTION OF INVENTORSHIP UNDER 35 U.S.C. § 256<br><br>**DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

Plaintiff, Krzysztof Sywula, ("Plaintiff" or "Sywula") files this Complaint against Defendants Alexis DaCosta ("DaCosta"), Vincent Coletti ("Coletti"), and Teleport Mobility, Inc. ("Teleport") for their erroneous omission of Plaintiff Sywula as an inventor on three separate United States Patents that recently issued to Teleport as assignee. Plaintiff Sywula is a significant shareholder of Teleport and was largely responsible for the conception, creation, architecture, and development of Teleport's intellectual property and technologies, including the claimed subject matter of the recently issued Patents. Despite Sywula's ownership, intellectual property conception and reduction to practice of the inventions in the recently issued Patents, Defendants refuse to list Plaintiff Sywula as an inventor despite having promised to do so many times during the pendency of the applications that ultimately matured into the Patents.

## **THE PARTIES**

1.     Plaintiff Sywula is an individual who is currently located in Poland.

2.     Defendant Alexis DaCosta is an individual that resides in San Diego County, California. He is the Chief Executive Officer, a director, and shareholder of Defendant Teleport. Defendant DaCosta has substantial personal and business activity in San Diego County.

COMPLAINT FOR CORRECTION OF
INVENTORSHIP AND
DEMAND FOR JURY TRIAL                    2

3.     Defendant Vincent Coletti is an individual that resides in San Marcos, California.  He has some unknown role and position of authority at Defendant Teleport, and on information and belief he is involved with decision making at Teleport.

4.     Defendant TELEPORT MOBILITY, INC. is a Nevada corporation registered to do business in the state of California.  Teleport's main office is located at 9507 Lavender Star Drive, San Diego, California 92127.

5.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendant DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names.  Any reference in this Complaint to the actions or inactions of any defendant, whether such reference is made to such defendant by specific name or otherwise, is also a reference to the actions or inactions of DOES 1 through 20, inclusive.

## JURISDICTION AND VENUE

6.     This is a civil action pursuant to 35 U.S.C. § 256 for correction of inventorship of three recently issued United States Patents: Patent No. 11,087,250 titled "Interactive Real Time System And Real Time Method of Use Thereof In Conveyance Industry Segments", 11,087,252 titled "Interactive Real Time System And Real Time Method of Use Thereof In Conveyance Industry Segments" 11,087,253 titled "Interactive Real Time System And Real Time Method of Use

Thereof In Conveyance Industry Segments", each attached hereto as Exhibits 1, 2 and 3, respectively (referred to collectively as "the Patents").

7.     The Court has subject matter jurisdiction over this action under 28 U.S.C. Section 1331 (federal question jurisdiction).

8.     Plaintiff is informed and believes that this Court has personal jurisdiction over Defendants because Defendants have a principal place of business in San Diego County, or reside in San Diego County.

9.     In addition, the claims alleged herein arise from Defendant's acts in the State of California including the County of San Diego, and which have caused damage to Plaintiff in the state of California.

10.     Defendant maintains offices in San Diego County, and thus venue is proper in this judicial district under 28 U.S.C. Sections 1391(b)(1) through 1391(b)(3).

## BACKGROUND

## PLAINTIFF'S INVENTION IN THE PATENTS

11.     Plaintiff is a software development expert, and has significant experience in the field of software engineering, including the conception, design, development, implementation and maintenance of complex software systems.

**Plaintiff Meets Alexis DaCosta –**

**The "Expedia for Ride-Sharing" Application**

12.     In or around early April 2016, DaCosta contacted Plaintiff to see if Plaintiff would be interested in developing potential software/mobile applications. DaCosta informed Plaintiff that he knew that Plaintiff had significant expertise in software development and engineering and wanted to work with Plaintiff on a new business.

13.     In April 2016 DaCosta, Coletti  and Plaintiff started meeting at the Santorini Island Grill restaurant in San Diego about once a week. DaCosta and Coletti wanted to start a business and they were pitching ideas to Plaintiff.  During those conversations, and based on the statements DaCosta and Coletti were making, and based on Plaintiff's work experience, it appeared to Plaintiff that DaCosta and Coletti did not have a good working knowledge about how to properly build a software product and were not software engineers.

**Plaintiff Conceives, Creates, and Develops the**

**"Expedia for Ride-Sharing" Application**

14.     After the April 2016 meeting, Plaintiff immediately started studying and researching the expedia.com/mobile app model to assess if it could be used for ride-sharing.  Plaintiff worked on how to engineer, from a software development perspective, a software product/mobile application to see if this idea

could work. Coletti and DaCosta did not provide any input to Plaintiff as to how to actually engineer or develop the software/source code or algorithms for the product.  Since 2016, Plaintiff was solely responsible for and took the lead on developing the software and algorithms for a software/mobile application relating to the facilitation of ride-shares among multiple vendors – a product to be launched by what eventually became Defendant Teleport.

15.    For the remainder of 2016 and into 2017, Plaintiff continued his work in developing the software/mobile application design, architecture, and related source code and algorithms for the ridesharing software/mobile application idea. DaCosta and Coletti were not involved with the substantive development, design, or architecture of the software/mobile application.  Throughout the course of the project, Plaintiff Sywula was directing and leading DaCosta and Coletti through, and educating them about, software development.

16.    Plaintiff Sywula fully designed and built the software, related source code and interfaces.  One component of the software, the iOS application front end, was built by a contractor pursuant to Plaintiff's specifications that Plaintiff created and developed.  Plaintiff Sywula was responsible for overseeing, managing, directing and navigating that contractor's work.

17.    As part of the work in developing and designing the software and related technologies for the ride-sharing application, Plaintiff Sywula continued to

educate DaCosta and Coletti about the software and algorithms that Plaintiff was developing.  Plaintiff walked them through the algorithm he invented for matching cars with potential ride-share customers.

18.    Plaintiff conceived, created and developed the UML (unified modeling language) diagrams, including activity diagrams, deployment diagrams, use case diagrams, algorithm activity diagrams, and Autonomous Vehicle Automated Platform Activity Diagrams.  UML diagrams are a critical piece of software development that, taken together, explain in a very detailed way how the system and how the algorithm(s) works.  UML is a standard in the field of software development on how to explain and present all of the aspects of the software system, including connections between servers and algorithms. Based on Plaintiff's experience and his personal interactions with DaCosta and Coletti, it was apparent that neither DaCosta or Coletti fully understood or knew how to use UML diagrams. Plaintiff Sywula educated them on what UML is and how it works in software, including the software Plaintiff was developing.

19.    Starting in or around June 2016, Plaintiff met with DaCosta and Coletti a few times a week to work on the patents for the software technologies Plaintiff was developing, including for the UML diagrams (activity diagrams, deployment diagrams, use case diagrams, algorithm activity diagrams, Autonomous Vehicle Automated Platform Activity Diagrams).  Plaintiff wrote the

following 25 domestic and international patent applications that include Plaintiff Sywula's conception, software design, development, architecture and algorithms: including but not limited to WO2019027715A1, AU2018309614A1, CA3071089A1, CN111201547A, EP3662389A1, Japan patent – publication number unknown, SG11202000876SA, WO2019027718A1, AU2018309614A1, CA3071089A1, CN111164662A, EP3662389A1, Japan patent – publication number unknown, SG11202000876SA, US20180053136A1, US20180053423A1, US20180336510A1, WO2019027715A1, WO2019027718A1, US20190251496A1, and 17/124,833; Patent Application Numbers: 62/375,491 (US provisional); 62/426,549 (US provisional); 62/482,306 (US provisional); 62/539,706 (US provisional); US 15/680,439; US 15/675,757; US 16/038,487; US 16/222,817; US 17/124,833; PCT/US18/43359; PCT/US18/43363; AU 2018309614 based on PCT/US2018/043359 (Australia); AU 2018309617 based on PCT/US2018/043363 (Australia); CA 3071144 based on PCT/US2018/043359 (Canada); CA 3071089 based on PCT/US2018/043363 (Canada); 201880062451.4 based on PCT/US2018/043359 (China); 201880063118.5 based on PCT/US2018/043363 (China); JP 2020-529093 based on PCT/US2018/043359 (Japan); JP 2020-529094 based on PCT/US2018/043363 (Japan); SG 11202000877T based on PCT/US2018/043359 (Singapore); SG 11202000876S based on PCT/US2018/043363 (Singapore); EP18841111 (EPO); EP18841983

(EPO).  Neither Defendant DaCosta and Coletti or had any substantive input into the development or creation of the subject matter of these patents, and neither conceived, developed or explained how the actual algorithm worked as presented in the patent claims.

20.     In 2018, Plaintiff Sywula continued to design, develop, and build the software, and related source code, architecture, interfaces, and algorithms for the ride-sharing application.  That work included the following: Xelerate, Xelerate Demo, Blacklotus, and BlueKiwi software.  This was done without input from DaCosta and Coletti on the design, build, and algorithms and how they would function.

21.     Plaintiff Sywula invented the two-step process of filtering and identifying the match between conveyance service requests and conveyance service offerings.  Plaintiff worked on methods to retrieve conveyance service requests and offerings from third-party servers.  Plaintiff Sywula also came up with the idea and developed an external server/central server break down to facilitate aggregating multiple service providers on a single platform (i.e. bringing to fruition the "Expedia for ridesharing" idea – namely Uber, Lyft, Zipcar and others on a single website). Plaintiff Sywula conceived the system, created all of the designs, UML diagrams, and blueprints.

22.     Sywula invented, created, and/or developed the following: pre-filtering and regular matching vs long-haul matching of conveyance service requests with conveyance service offerings; the idea of securing subsequent/additional requests/offerings for ride-shares through the mobile application; the standardizing and aggregating of conveyance service requests offerings; conveyance data which includes all miscellaneous data relating to the conveyance service offering or request, e.g. driver's registration plate or customer rating for the ride; how geographical location data is utilized; how AV/AV owner/driver/rider utilizes the application; the software, prototypes and final versions of the ride-sharing application.  Each of these features is prominently claimed in the claims issued in the issued Patents.

## Teleport is Formed

## – Plaintiff's Employment as CTO –

## Defendants' Failure to Pay Wages

23.     In or about July 2019, Plaintiff Sywula and DaCosta formed Teleport and registered it in Nevada. Plaintiff Sywula is the one who suggested and came up with the "Teleport" name.  Plaintiff Sywula purchased with his personal credit card the Teleport domain – teleportnow.io.  Teleport was formed so it could own and continue to create, develop, and build the ride-sharing application and related technologies and intellectual property that Plaintiff created, developed, and was

working on from April 2016.  Teleport's main office and operations were, and continue to be, based in California.

24.     Plaintiff was employed as Teleport's Chief Technology Officer ("CTO") from July 2019 up through at least January 2021.  He also serves as Teleport's Secretary and a Director on the Board of Directors.  Plaintiff Sywula presently owns 49% of Teleport with over 2 million shares of stock.

25.     Presently, DaCosta serves as a director on Teleport's board, along with others.  DaCosta and Plaintiff are the significant owners in Teleport and Coletti continues to work with and cooperate with DaCosta to control Teleport.

26.     As Teleport's CTO, Plaintiff was responsible for overseeing, managing, and administering all company computer systems, networks, servers, software, and technologies for Teleport.  He was also primarily responsible for the conception, creation, development, building, and implementation (and continuation of the same) of the software, source code, algorithms, architecture and related technologies and functionality for the ride-sharing application, including the related patents, that Plaintiff had created and developed starting in 2016.

27.     As part of Plaintiff's employment with Teleport, Plaintiff was directed by DaCosta to execute the Teleport Proprietary Information and Inventions Assignment Agreement ("PIIA"). The PIIA states, in part, "[i]n

consideration of [Plaintiff Sywula's] employment or continued employment by Teleport Mobility, Inc. (the "*Company*"), and the compensation now and thereafter paid to [Plaintiff Sywula], [Plaintiff Sywula] hereby agree[s]" to assign inventions.  However, there has never been any consideration to Plaintiff Sywula for any such assignment.

28.     Plaintiff has performed extensive work for Teleport, including thousands of hours of labor.  At no time from 2019 to the present has Teleport paid Plaintiff any compensation or wages for the work Plaintiff did while "employed" by Teleport and at the direction of Teleport, and thus Defendant has failed to meet its legal obligations under the PIIA and have failed to provide any of the required consideration under the PIIA.  The PIIA is void ab initio due to Defendant's failure to provide the consideration promised.

29.     This failure to provide Plaintiff with wages/compensation also constitutes multiple violations of several different California wage and hour laws. Additionally, Defendants have failed to provide Plaintiff Sywula with any wage statements as required under applicable California wage and hour laws.

30.     Defendants also failed to reimburse Plaintiff for business expenses he incurred and paid for on behalf of Teleport, including but not limited to business travel expenses, business internet-based services, and patent attorney fees and USPTO fees.

31.     Plaintiff is informed and believes that the Teleport Board, including DaCosta, Coletti and others, were specifically responsible for the decisions about whether to pay wages/compensation and to reimburse expenses, and for the decisions about which Teleport employees would and would not receive wages/compensation.

32.     Plaintiff had conversations with DaCosta and Coletti about Teleport paying Plaintiff wages and each of them acknowledged that Teleport was obligated to pay Plaintiff wages.  To make matters worse, DaCosta was paid a salary by Teleport, yet Plaintiff received nothing.  Plaintiff is informed and believes that DaCosta and Coletti, and others authorized Teleport to pay DaCosta a salary but knowingly refused Plaintiff Sywula.  Plaintiff Sywula is further informed and believes that DaCosta has been receiving a six-figure salary from Teleport for his position as Teleport CEO.

33.     As discussed herein, the development of the intellectual property, including the subject matter of the patents and the "Teleport" trademark, was done by Plaintiff and not DaCosta or Coletti.  DaCosta's effort were focused on soliciting investors and raising funds, which for the most part DaCosta has been unsuccessful in accomplishing.  Despite the fact that Plaintiff created the Teleport trademark, DaCosta has claimed ownership of this trademark *in his individual capacity*.  DaCosta has gone so far as to use corporate counsel to assert this

individual right which constitutes a breach of fiduciary duty and misappropriation of corporate assets/funds.

### Defendants' Attempts to Deny Plaintiff His
### Rights in Teleport's Intellectual Property

34.     As noted above, Plaintiff was the inventor, creator, and developer of the ride-sharing application technologies, including the software, source code, algorithms, architecture and related technologies.  Yet, DaCosta has continued to insist that he is the inventor despite DaCosta having no real software development experience or relevant technical input that contributed to the actual inventorship of the subject patents.  Such conduct puts Teleport and Plaintiff Sywula at risk of substantial harm.

35.     Plaintiff Sywula attempted to rectify these matters, but to no avail. DaCosta and Coletti represented to Plaintiff Sywula that he would be included as an inventor.

36.     DaCosta and Coletti, including in conversations with attorney Musick (the attorney responsible for preparing and filing Teleport's more recent patents) reaffirmed their commitment to add Plaintiff as an inventor.

37.     DaCosta instructed attorney Musick to "Please add Krz as an inventor and applicant on this FastTrack as we spoke about yesterday." and "Regardless of who did what, the three of us are all inventors" in multiple emails

amongst DaCosta, Coletti and attorney Musick, in which they discussed that they would ensure that the patents relating to Teleport would reflect Plaintiff Sywula's inventorship of the concepts and work in those patents.  However, these promises were false given that Plaintiff was intentionally omitted from the Patents.

38.     During a series of meetings between November 17 – 19, 2020, Plaintiff informed attorney Musick that DaCosta falsely represented to the USPTO, and in related documents submitted to the USPTO, that he DaCosta, and not Plaintiff, was the inventor of the subject patents.  Attorney Musick stated that this inventorship issue should be addressed and rectified immediately.

39.     In or around December 2020 – January 2021, Plaintiff Sywula was the only person to explain to attorney Musick the details of the specific algorithm for the subject patents in order to help Musick overcome the patent examiner's rejections based on prior art, and convince the examiner that the prior art patents were not the same as Teleport's technology, thus paving the way for the Patents to issue.

40.     DaCosta did not and could not assess or explain the technological differences to ensure that subject Teleport patents were appropriate for registration with the USPTO.  Plaintiff Sywula believes, based on his experience and numerous conversations and emails with DaCosta, that DaCosta does not fully understand the content in the Teleport patents or how the underlying software

technologies in those patents works and therefore was not capable of discerning or articulating how the prior art patents and Teleport patents were different.  DaCosta simply lacks the knowledge or experience to support these patents.

41.   Attorney Musick understood that Plaintiff Sywula was an inventor, and also was the only person at Teleport that could explain the functionality and nuances of the system.

42.   In January 9, 2021, attorney Musick promised to add Plaintiff as a co-inventor "on all pending applications," stating in an email: "At this point, I would just request that *you accept my assurances and trust that we will make the correction of inventorship as discussed*, and *hope that I can still rely on you for technical input as needed* and for your cooperation in completing the necessary paperwork to effect the corrections" (emphasis added).

43.   At the time of attorney Musick's email above, Plaintiff Sywula was listed on one of the pending patent applications.  However, despite these promises to add Plaintiff Sywula as an inventor on the other applications, Plaintiff was not only omitted as a co-inventor from the two of the three applications that would issue as the Patents, but Defendants actually removed Plaintiff as a co-inventor from the third application, such that Plaintiff Sywula was not listed as an inventor on any Patent at issuance.

COMPLAINT FOR CORRECTION OF
INVENTORSHIP AND
DEMAND FOR JURY TRIAL                    16

44.     To date, Defendants have acted improperly in not confirming that Plaintiff Sywula was an inventor of the subject matter of the Patents.  Instead, DaCosta and Coletti have worked in concert with attorney Musick to falsely maintain that DaCosta and Coletti are the only inventors of the subject Patents.

45.     In fact, recently DaCosta and Coletti took additional efforts which have put Teleport's interests at risk.  This was done after Plaintiff took the position in other litigation matters that Teleport had breached the terms of agreements and therefore any assignment of rights by Plaintiff was void and invalid.  This legal assertion does not change the fact of who was an inventor of the claimed patent subject matter.

46.     Plaintiff has standing to petition this Court for correction of inventorship of these U.S. Patents because Plaintiff has suffered actual or threatened financial harm due to his omission as a joint inventor of these Patents, due in part to his ownership interest in Teleport, the patent assignee.

47.     Plaintiff further has standing to petition this Court for correction of inventorship because Plaintiff's omission from these Patents has caused Plaintiff concrete reputational harm, recognized as a basis for standing to correct patent inventorship under *Shukh v. Seagate*, 803 F.3d 659 (Fed. Cir. 2015).

48.     Plaintiff's reputational harm is based in part on the fact that Plaintiff's residence in the United States has been based in part on his L-1B visa

supported by Plaintiff's specialized knowledge in his field as a highly skilled software engineer and developer.  Plaintiff's recognition as an inventor of Teleport patents is critical to Plaintiff's continued repute as a computer software and programming specialist, supporting his L-1B visa harm.

49.    Plaintiff has standing to petition this Court for correction of inventorship because Defendants Teleport, DaCosta, and Coletti all schemed together and conspired to deprive Plaintiff of being named an inventor on the Teleport Patents, in direct violation of rules of inventorship, and their direct and repeated promises to him.  Therefore, Defendants Teleport, DaCosta, and Coletti are all responsible for Plaintiff's lack of inventorship which Plaintiff seeks to correct through this action.

50.    Plaintiff's lack of inventorship is redressable by this Court, which has the ability under 35 U.S.C. section 256 to remedy Plaintiff's harm by adding him as an inventor of the Teleport patents.

**FIRST CAUSE OF ACTION**

**Correction of Inventorship of U.S. Patents Pursuant to 35 U.S.C. §256**

51.    Plaintiff incorporates herein by reference each and every allegation in the preceding paragraphs.

52.     Plaintiff made independent conceptual contributions to the invention claimed in the 11,087,250 Patent, by conceiving of, solely, and/or with collaboration with others, every aspect of the claimed invention

53.     The inventorship of the 11,087,250 Patent is incorrect because Plaintiff is not listed as an inventor on the 11,087,250 Patent, through Defendant's omission, inadvertence, or error.

54.     The omission of Plaintiff as an inventor on the 11,087,250 Patent occurred without consent by, and with the objection of, Plaintiff.

55.     The inventorship of the 11,087,252  Patent is incorrect because Plaintiff is not listed as an inventor on the 11,087,252 Patent, through Defendant's omission, inadvertence, or error.

56.     Plaintiff made independent conceptual contributions to the invention claimed in the 11,087,252 Patent, by conceiving of, solely, and/or with collaboration with others, every aspect of the claimed invention.

57.     The omission of Plaintiff as an inventor on the 11,087,252 Patent occurred without consent by, and with the objection of, Plaintiff.

58.     The inventorship of the 11,087,253 Patent is incorrect because Plaintiff is not listed as an inventor on the 11,087,253 Patent, through Defendant's omission, inadvertence, or error.

59.     Plaintiff made independent conceptual contributions to the invention claimed in the 11,087,253 Patent, by conceiving of, solely, and/or with collaboration with others, every aspect of the claimed invention.

60.     The omission of Plaintiff as an inventor on the 11,087,253  Patent occurred without consent by, and with the objection of, Plaintiff.

61.     Plaintiff has standing to request a correction of inventorship of the Patents because Plaintiff should have been a listed inventor on all three Patents.

62.     By failing to name Plaintiff as a joint inventor in the declarations filed in support of the Patents, Defendants violated 35 U.S.C. §§ 115 and 116, which requires the identification of each inventor in the oath or declaration supporting a patent application.

63.     Without correction of the named inventor under 35 U.S.C. § 256, Defendants' violation of these federal statutes will continue unabated to the detriment of Plaintiff and the public at large.

64.     Plaintiff therefore, requests correction of the inventor named in the 11,087,250, 11,087,252, and 11,087,253 Patents to ensure compliance with the federal requirements for filing patent applications, to preserve Plaintiffs' good name and reputation, and to properly identify the inventors for the benefit of the public.

65.     Upon information and belief, all parties concerned with the inventorship of the 11,087,250, 11,087,252, and 11,087,253 Patents for which correction of inventorship is sought have been put on notice or will be put on notice pursuant to filing and service of this Complaint.

66.     Prior to issuance of the Patents, Counsel for Plaintiff contacted attorney Musick and expressed concern regarding the omission of Plaintiff as an inventor on the applications which would mature into the Patents.

67.     Prior to issuance of the Patents, Counsel for Plaintiff contacted attorney Musick and expressed concern regarding the omission of Plaintiff as an inventor on the Patents and requested that the Patents be pulled from issuance so that the inventorship could be corrected.  In response, attorney Musick confirmed that Plaintiff was omitted intentionally and that no corrections to inventorship would be made.

68.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sywula prays for judgment and relief against Defendant Teleport as follows:

(a)    A Temporary Restraining Order and Preliminary Injunction prohibiting Defendant from selling, assigning, collateralizing, or otherwise transferring any of the Patents, pending the outcome of this case;

(b)    For Judgment that Plaintiff Sywula is a joint inventor of the invention claimed in U.S. Patent No. 11,087,250 titled "Interactive Real Time System And Real Time Method of Use Thereof In Conveyance Industry Segments", U.S. Patent No. 11,087,252 titled "Interactive Real Time System And Real Time Method of Use Thereof In Conveyance Industry Segments", and U.S. Patent No. 11,087,253 titled "Interactive Real Time System And Real Time Method of Use Thereof In Conveyance Industry Segments;

(c)    Issuance of an order pursuant to 35 U.S.C. § 256, requiring the Director of the United States Patent and Trademark Office to correct inventorship of U.S. Patent No. 11,087,250, U.S. Patent No.

11,087,252, and U.S. Patent No. 11,087,253 by adding Plaintiff Sywula as a co-inventor;

(d)     Judgment that Plaintiff be awarded their attorney's fees and costs of this suit in bringing this action;

(e)      Should the Court determine that the omission of Plaintiff Sywula was intentional and with deceptive intent, then an award of punitive damages against Defendants; and

(f)     For such additional, other, or further relief as the Court deems just and proper.

Dated:  August 13, 2021                    EASTMAN IP

                                           By:   /s/ Gary L. Eastman
                                                 Gary L. Eastman, Esq.
                                                 Attorney for Plaintiff
                                                 Krzysztof Sywula

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **DEMAND FOR JURY TRIAL**

Plaintiff, Krzysztof Sywula hereby demands a trial by the jury on its claims herein and all issues and claims so triable in this action.

Dated:  August 13, 2021                          EASTMAN IP


By:  /s/ Gary L. Eastman_____
Gary L. Eastman, Esq.
Attorney for Plaintiff
Krzysztof Sywula,

COMPLAINT FOR CORRECTION OF
INVENTORSHIP AND
DEMAND FOR JURY TRIAL              24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 2**

COMPLAINT FOR CORRECTION OF
INVENTORSHIP AND
DEMAND FOR JURY TRIAL                    26

1

**EXHIBIT 3**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28