Gary L. Eastman, Esq. (CSB #182518)
Eastman IP
401 West A Street, Suite 1785
San Diego, CA 92101
(619) 230-1144
Attorney for Plaintiff
KRZYSZTOF SYWULA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRZYSZTOF SYWULA, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>Alexis DaCosta, an individual; Vincent Coletti, an individual; TELEPORT MOBILITY, INC., a Nevada corporation; and DOES 1-20, inclusive,<br><br>        Defendants. | Case No. 3:21-cv-01450-BAS-AGS<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST TELEPORT MOBILITY, INC.**<br><br>Judge: Hon. Cynthia A. Bashant<br>Date: TBD |

Plaintiff Krzysztof Sywula ("Sywula") seeks a non-disruptive and non-burdensome injunctive remedy to maintain the status quo while complex issues of patent inventorship and ownership are being decided. He seeks this immediate relief because without it, Teleport can at any time transfer or encumber the three subject patents to his detriment. Alexis DaCosta originally approached Sywula's co-worker Calvin Park with only a general idea to create an invention in the ride-sharing and conveyance industry. (Decl. Park, ¶ 4.) Park advised DaCosta that none of these initial ideas were unique enough to be patentable and suggested that Sywula be brought in to help develop a patentable invention. (Decl. Park, ¶¶ 6.) The concept for what became the subject matter of the disputed patents was conceived only once Sywula entered the picture. (Decl. Park, ¶¶ 6-8.)

For years, Teleport, DaCosta, and Coletti have exploited Sywula, a foreign national, in order to benefit from his technical expertise and financial contributions without giving Sywula a single benefit—in terms of payment, equity, or otherwise. Sywula has not been paid a dime for his thousands of hours of labor spent over more than four years on writing and developing the complex diagrams, codes, and algorithms critical to the conception of the patent subject matter. Although he was guaranteed compensation under the 2016 Consulting Agreement and 2019 Employee Agreement, he received none. The 2.4 million shares of Teleport that Sywula currently owns were earned by him not through his labor but through his capital contributions: in April 2018, he began paying 48% of the company's expenses pursuant to an agreement to split the expenses with DaCosta in exchange for a proportional 48% ownership of Teleport, which he received before he was even hired as a Teleport employee. Admitting that Sywula was never paid any salary, Teleport contends that these stocks—which Sywula paid for on his own dime—entitled

- 1 -
REPLY IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TRO

Teleport to continue taking Sywula's money and utilizing his labor while simultaneously stripping him of any rights in the patents whatsoever. Setting aside the labor law violations for another day, Sywula simply wants to be named as an inventor on the patents and, until that happens, to prevent Teleport from taking any further action to jeopardize his interests.

1. **This Venue is Proper, and the First-to-File Rule Does Not Apply Because Correction of Not-Yet-Issued Patents Was Non-Justiciable When the First Lawsuit Was Filed.**

On February 3, 2021, months before the subject patents issued, Teleport and its subsidiary Northern Lights, LLC filed a complaint (Dkt. No. 33) against Sywula in the Northern District of California in the case of *Teleport Mobility Inc. v. Sywula*, Case No. 3:21-cv-00874-SI (N.D. Cal. Feb. 3, 2021). Teleport's Northern District complaint requested declaratory judgment regarding ownership of the six then-pending patent applications from which the three issued patents that are now in dispute spring. (Dkt. No. 33, ¶ 128.) However, inventorship issues are not ripe for federal adjudication until a patent issues, per statute and federal case law. 35 U.S.C. § 256; 37 C.F.R. § 1.324(a); *Sagoma Plastics, Inc. v. Gelardi*, 366 F. Supp. 2d 185, 188 (D. Me. 2005). The inventorship issues at the core of the instant action could not and should not have been asserted by any party until after the subject patents issued on August 10, 2021. Once the claims accrued, Sywula, as the first party to assert justiciable correction of inventorship claims, was entitled to file his action in any proper venue. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[T]he plaintiff's choice of forum should rarely be disturbed.").

This Court need not transfer this narrowly tailored inventorship action to the Northern District under the first-to-file rule, as the first-filed Northern District claim

for declaration of inventorship was not based on issued patents and therefore was non-justiciable at the time of filing. Filing for declaratory judgment in an "anticipatory lawsuit" is a well-known first-to-file rule exception that discourages plaintiffs from improper forum shopping. *Knapp v. Depuy Synthes Sales, Inc.*, 983 F. Supp. 2d 1171, 1178 (E.D. Cal. 2015) (declining to transfer declaratory judgment action to the first venue because it "would have been impossible" for the other party to file first, as the harm has not yet been incurred); *Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*, 42 F. Supp. 3d 1377, 1383 (S.D. Cal. 2014).

Concerned by Teleport's actions to his detriment, Sywula filed the instant lawsuit in this district within days of the patents issuing, in hopes of correcting inventorship and securing his patent rights as quickly as possible. He cannot seek immediate injunctive relief from the Northern District, where proceedings are now stayed. This district is the only other suitable venue because DaCosta resides in the Northern District, while Coletti and Teleport are both located in San Diego County.[1] Although JAMS arbitration proceedings between the parties are in progress, an arbitrator lacks the ability to issue the injunctive relief that Sywula needs.[2] In the interest of preventing irreparable harm, a court may grant an injunction even when

---

[1] DaCosta resides in Santa Clara County. (Dkt. No. 14-1, ¶ 5.) Coletti resides in San Marcos, California, and Teleport has its principal place of business in California at 9507 Lavender Star Drive, San Diego, CA 92127 as reflected in its current corporate records. (Decl. Sywula, ¶¶ 14-15.)

[2] Whereas Sywula in the Northern District action advocated for arbitration of Teleport's contract-based claims based on an arbitration clause in the relevant contract, inventorship is not a contract-based claim and thus is not contractually subject to mandatory arbitration. Inventorship (as distinct from ownership) is based solely on a person's actual inventive contributions and cannot be modified by contract. See *Vapor Point LLC v. Moorhead*, 832 F.3d 1343, 1349 (Fed. Cir. 2016).

- 3 -
REPLY IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TRO

there is a related case pending in another district. *Fitbit, Inc. v. Laguna 2, LLC*, No. 17-cv-00079, 2017 U.S. Dist. LEXIS 26269, at *6 (N.D. Cal. Feb. 24, 2017). For the reasons explained below, the Court should take this opportunity to issue an injunction to protect the interests of Sywula and the public.

**2. Teleport Had Ample Notice of This Request for Immediate Injunctive Relief, Which Is Warranted to Prevent Teleport from Irreversibly Compromising Sywula's Patent Ownership Interest.**

Immediate *ex parte* relief is warranted because without it, Teleport can at any time transfer, collateralize, or otherwise encumber patents that it does not fully own.[3] In other settings, interim injunctive relief has been granted to prevent a potentially fraudulent transfer of disputed property to an unsuspecting bona fide purchaser or in any other manner designed to "place those assets further out of the reach of [the plaintiff]." *Pheasant v. Zaremba*, 398 B.R. 583, 590 (N.D. Ohio 2008) (preliminary injunction granted); see also *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp.

---

[3] The current *ex parte* application is not without notice, for Judge Bashant does not permit the filing of an *ex parte* application in her court without actual notice to the opposing counsel. In compliance with Local Rule 83.3(g) and Judge Bashant's standing order, Sywula's counsel Gary Eastman discussed the instant request for injunctive relief with Andrew Kubik, counsel for Teleport, over the telephone on August 25, 2021, more than two weeks before this TRO application was filed. (Dkt. No. 10, ¶¶ 2-5; Decl. Eastman, ¶¶ 2-3.) Teleport was put on clear notice that unless it agreed to stipulate to an interim freeze on transferring or encumbering the patents, Sywula would file for immediate injunctive relief. (Decl. Eastman, ¶¶ 4-5.) Further, Mr. Eastman stated during the meet and confer that he would wait at least one week before filing an *ex parte* application in order to give Teleport ample advance notice. (Decl. Eastman, ¶ 6.) Thus, Teleport was made aware of Plaintiff Sywula's concerns, the intent to file for ex-parte protection, and the general timeframe in which the *ex parte* application would be filed. (Decl. Eastman, ¶ 7.)

2d 308, 332 (E.D.N.Y. 2008) (court ordered freeze of disputed property pending litigation); *Kaisha v. Dodson*, No. 08-0225, 2009 U.S. Dist. LEXIS 37554, at *17 (N.D. Cal. Apr. 21, 2009).  After years of being strung along by Teleport and its lawyers on the promise of his legally earned inventorship, Sywula reasonably fears that without an injunction, Teleport will once again scheme to prevent him from gaining any benefit at all from his years of laboring over the ride-sharing application, on the side of a demanding full-time tech job, for absolutely no compensation.  The Court should grant an injunction because Teleport points to no real harm it would suffer, and the requested relief would simply maintain the status quo while preventing Teleport from interfering with the patents to the potential detriment of Sywula and/or a bona fide purchaser.

**3. The 2016 and 2019 Assignments Are Invalid for Lack of Consideration.**

An assignment of patent ownership is only valid so long as the underlying contract is valid.  Although all contracts must be supported by valuable consideration, Sywula received none during more than four years of working on this project.  Teleport points to the assignment provisions in the 2016 Consulting Agreement and 2019 Employee Agreement.  (Dkt. No. 14, p. 15.)  Under the 2016 Consulting Agreement, Sywula was supposed to receive 7% equity in the DaCosta/Coletti partnership by the time the utility application for the invention (Ser. No. 15/675,757) was filed August 17, 2017.  Sywula did not receive any equity.  (Decl. Sywula, ¶ 2.)  Then when Teleport hired Sywula as an employee in 2019, he by law was required to receive a salary.  Sywula never received any salary, which Teleport does not dispute.

(Dkt. No. 14-1, p. 11, item 15 (righthand column) ("There was never any guarantee of salary.").

DaCosta avers in his declaration that Sywula received a "substantial equity package in Teleport, in lieu of monetary compensation." (Dkt. No. 14-1, p. 11, item 15 (righthand column).) But Teleport did not "pay" Sywula with equity as he was promised (Decl. Sywula, ¶ 7.) Rather, Sywula himself purchased said equity through his payment of about $35,000 into Teleport, as DaCosta himself acknowledges in the next line of his declaration. (Dkt. No. 14-1, p. 11, item 16 (righthand column).) Pursuant to an agreement to split ownership of what would eventually be Teleport, with Sywula owning 48% and DaCosta owning 52%, Sywula on April 23, 2018 began paying his 48% pro-rata share of the enterprise's expenses. (Decl. Sywula, ¶ 3.) After about a year and half of splitting these expenses, Sywula officially received his 2.4 million Teleport shares on November 1, 2019. (Decl. Sywula, ¶ 3.) Sywula's shares, which he gained through his own capital investment, cannot serve as consideration for his obligation to assign inventions under either the 2016 or 2019 agreements, making these assignment obligations invalid. Moreover, Teleport, by electively removing to federal court Sywula's state-law action addressing these same contract invalidity claims (Dkt. No. 40), is estopped from now asserting that such claims are ineligible for federal adjudication. (Dkt. No. 14, pp. 15-16.) Therefore, this Court should determine based on the undisputed evidence that Sywula's assignment obligations are invalid and he was not obligated to assign his part-ownership of the patents to Teleport.

**4. Sywula Is a Co-Inventor Who Substantially Contributed to the Conception of At Least One Claim In Each of the Three Patents.**

Sywula is surely a co-inventor of the patents as an experienced Intel software engineer who was highly involved with the inventive process of the highly software-dependent invention over the course of over four years.  As also acknowledged by Calvin Park, another software engineer who was present at the group's early meetings, DaCosta and Coletti had in mind only vague concepts before Sywula became involved, and Sywula was a key driver in making this invention patentable. (Decl. Park, ¶¶ 8-9; Dkt. No. 12, ¶ 4.)  Specifically, in one of the initial meetings, Sywula proposed the two-step process of filtering and identifying conveyance service offerings or conveyance service requests.  (Decl. Park, ¶ 8; Dkt. No. 12, ¶4.) Importantly, a system diagram included in the first provisional patent application filed August 16, 2016 was a hand-written diagram that Sywula drew with a pen in the Santorini restaurant during one of the group's early collaboration sessions. (Decl. Park, ¶¶ 9-14; Decl. Sywula, ¶ 5.)  Throughout the years-long process, Sywula continued to make critical contributions. (Decl. Sywula, ¶ 4.) DaCosta, Coletti, and Sywula had worked together from the very beginning and by April 2018, DaCosta agreed that Sywula should be a major owner of the company.  In November 2019, Teleport also hired Sywula to be its chief technology officer and he became a board director. (Decl. Sywula, ¶ 6.)  Sywula was no mere consultant or occasional "pair of hands."  Sywula is, and deserves to be recognized as, a co-inventor.

From the outset, DaCosta contemplated that Sywula would be an inventor of the patents.  Thus, DaCosta asked Sywula to sign the 2016 and 2019 agreements containing assignment provisions so that he and/or Teleport would own all of the patent rights.  When Teleport was under the belief that it owned all rights in these patents via assignment, Teleport and patent attorney Eleanor Musick were more than happy to recognize Sywula as a co-inventor, as evidenced by his initial inclusion on

one of the patent applications as well as multiple conversations and emails in December 2020 and January 2021. (Dkt. No. 12, ¶¶ 19-23.) This drastically changed in mid-January 2021 when Sywula—finally having lost all hope of being paid after four years of involvement with no compensation despite multiple pleas—began suggesting that the patent assignments might be invalid (as discussed above), entitling him to patent ownership. (Decl. Sywula, ¶ 8.) Once Teleport realized that its blatant failure to pay Sywula could compromise its ownership of the patents, Teleport conveniently pivoted to asssert that Sywula had made no inventive contributions.

Teleport swiftly backtracked from its original belief that Sywula was a co-inventor. In mid-January 2021, DaCosta, Teleport's attorney Russ Davis, and Musick were repeatedly assuring Sywula that he would be added as an inventor on all of the patents (Dkt. No. 12, Exhs. C-G; Decl. Sywula, ¶ 8 and Exh. A.) By the end of the month, Teleport had sent Sywula a demand letter wholly denying his inventive contributions (Dkt. No. 41, Exh. A). Quickly thereafter, on February 3, 2021, Teleport filed the Northern District lawsuit requesting a declaration that Sywula is not a joint inventor of the patent applications that would eventually become the '250, '252, and '253 Patents. (Dkt. No. 33, ¶ 128.)[4] Then in June 2021, Teleport and attorney Musick purposefully removed Sywula from the one patent application he was already named on by removing tangential claims which were supposedly his sole contributions, even though he conceived of much more. (Decl. Eastman, ¶¶ 8-10.) Meanwhile, DaCosta began removing and/or restricting Sywula's access to documents on the Google Workspace that they had shared as a collaboration platform since the project began in 2016. (Decl. Sywula, ¶ 9.) These documents, which include version and edit histories,

---

[4] This claim, filed before the patents issued, was non-justiciable, as discussed *infra*.

show that Sywula did indeed conceive of claims included in the issued patents. (Decl. Sywula, ¶ 9.) DaCosta continues to remove documents from the Google Workplace even after the Northern District's order of March 7, 2021 prohibiting spoilation of evidence. (Decl. Sywula, ¶ 9; Dkt. No. 34, p. 5.)

Teleport's drastic change of position regarding inventorship was not due to a sudden enlightenment, as Musick and DaCosta suggest. Rather, starting in January 2021, Teleport no longer was on good terms with Sywula, knew that it had not been compensating him under the relevant contracts, and wanted to prevent Sywula from claiming any stake or interest in these patents. However, a change of heart does not entail a change of inventorship. Sywula always was a co-inventor of these patents and is likely to succeed on the merits of his section 256 claim.

**5. Sywula Has Standing to Correct Inventorship.**

As a part-owner of the patents who did not assign any of his ownership interest to Teleport, Sywula has a financial interest in correcting inventorship. *Chou v. Univ. of Chi. & Arch Dev. Corp.*, 254 F.3d 1347, 1358 (Fed. Cir. 2001). In addition, Sywula has an alternative basis for standing based on his reputational harm arising from this inventorship dispute. See *Shukh v. Seagate Tech.*, LLC, 803 F.3d 659, 665 (Fed. Cir. 2015). His reputation certainly has suffered: he has been deprived of the career value inherent in being recognized as a patent inventor, has been relegated in public court filings to no more than "company tech support" and a "pair of hands," and has even

had police reports and a civil harassment restraining order filed against him by DaCosta since this inventorship dispute arose. (Decl. Sywula, ¶¶ 10-12.)[5]

Despite his temporary visit to Poland from February 2021 to June 5, 2021, Sywula's reputation here in the United States is important to him. (Decl. Sywula, ¶ 11.) He has worked in the U.S. for Intel the past six years and has brought his entire family here; his reputation is important for him to remain employed by one of the leading global technology companies and to clear his name from the controversy that clouds this inventorship dispute. (Decl. Sywula, ¶ 13.) See *Krauser v. Evollution IP Holdings, Inc.*, 975 F. Supp. 2d 1247, 1261 (S.D. Fla. 2013) (reputational standing can rest on the plaintiff's vindicatory interest in correcting inventorship).

## 6. Conclusion

Sywula respectfully requests that this Court grant a TRO and preliminary injunction enjoining Teleport from transferring, collateralizing, or otherwise encumbering United States Patent Nos. 11087250, 11087252, and 11087253 until the present inventorship issues are resolved fully and finally.

Dated: September 22, 2021                EASTMAN IP

By: /s/ Gary L. Eastman
Gary L. Eastman, Esq.
Attorney for Plaintiff
Krzysztof Sywula

---

[5] Litigation privilege does not prevent Sywula from using court-filed statements to demonstrate the implications of this inventorship dispute for his reputation for purposes of establishing his standing to challenge patent inventorship. These statements simply cannot serve as the basis for the speaker's civil liability.

# CERTIFICATE OF SERVICE

I, the undersigned certify and declare as follows:

I am over the age of eighteen years and not a party to this action. My business address is 401 West A Street, Suite 1785, San Diego, California, 92101, which is located in the county where the service described below took place.

On September 22, 2021, at my place of business in San Diego, California, I served a copy of the following document:

**REPLY IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST TELEPORT MOBILITY, INC.**

via ECF. The undersigned hereby certifies that he caused a copy of the foregoing document to be served on all parties in the action by filing this document with the clerk of the U.S. District Court, Southern District of California, using the CM/ECF filing system.

I certify and declare under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct.

Executed on September 22, 2021, in San Diego, California.

By:   /s/ Gary L. Eastman
                          Gary L. Eastman