Frederic G. Ludwig, III (CA Bar No. 205332)
eric.ludwig@ludwigiplaw.com
Andrew J. Kubik (CA Bar No. 246902)
andrew.kubik@ludwigiplaw.com
LUDWIG, APC
12463 Rancho Bernardo Road, No. 532
San Diego, California 92128
Telephone: 619-929-0873

Attorneys for Defendant
TELEPORT MOBILITY. INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRZYSZTOF SYWULA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ALEXIS DaCOSTA, an individual; VINCENT COLETTI, an individual; TELEPORT MOBILITY, INC., a Nevada corporation; and DOES 1-20, inclusive<br><br>Defendants. | Case No. 3:21-cv-01450-BAS-AGS<br><br>**DEFENDANT TELEPORT MOBILITY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO DISMISS, OR ALTERNATIVELY, TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA, PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Judge: Hon. Cynthia A. Bashant<br>Hearing Date: November 8, 2021<br><br>***NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT*** |



# Contents

I.   INTRODUCTION ........................................................................................1

II.  FACTUAL BACKGROUND........................................................................3

A.   The First-Filed Lawsuit in the Northern District ................................3

B.   The Current Southern District of California Lawsuits..................................4

C.   All Defendants Are Residents of California, and Defendants DaCosta and Teleport Reside in the Northern District ........................................................5

D.   Sywula's Assignment of Intellectual Property Rights..................................6

III. ANALYSIS ...............................................................................................6

A.   Motion to Dismiss for Lack of Standing Under Rule 12(b)(1) ....................6

1.   The Filing of An Amended Complaint Does not Moot Teleport's Original Motion to Dismiss.............................................................................7

2.   Without an Ownership Interest in the Patents-in-Suit, Sywula Lacks Standing to Sue ................................................................................8

Sywula has no right to request a correction of inventorship of any of the patents-in-suit, because he assigned away his rights to DaCosta and Teleport.  The Patent Act specifies: ..........................................................................................8

3.   Sywula's Allegations Concerning the Enforceability of Underlying Assignment Agreements Are Irrelevant ...............................................11

4.   Sywula Lacks Standing Based on Financial Harm...................................11

5.   Sywula Lacks Standing Based on Reputational Harm .............................12

6.   Since the Claims in This Case Are Properly Construed as Compulsory Counterclaims That Belong in *Teleport I*, Dismissal Is Appropriate for Lack of Subject Matter Jurisdiction ..............................................................13

7.   Sywula Violates the Rule Against Claim Splitting .................................15

B.   Motion to Transfer to the Northern District of California...........................16

1.   The Northern District of California Is a District in Which Sywula's Lawsuit "Might Have Been Brought" ............................................................18

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.    Significant Factors Weigh Heavily in Favor of Transferring this Case to the Northern District ........................................................................................... 19

3.    The First-to-File Rule Additionally Supports Transferring this Case to the Northern District .............................................................................................. 22

IV.   CONCLUSION ............................................................................................ 24



1

TABLE OF AUTHORITIES

2

**Cases**

3

*A.J. Industries, Inc. v. U.S. Dist. Court for Cent. Dist.*, 503 F.2d 384 (9th Cir. 1974)

4

...................................................................................................................19

5

*Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359 (Fed. Cir. 2010) ...............7

6

*Adams v. California Dep't of Health Servs.*, 487 F.3d 684 (9th Cir. 2007)...3, 15, 16

7

*Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622 (9th Cir. 1991).......................23

8

*Am. Canine Found. v. Ben Sun, D.M.V.*, 2006 U.S. Dist. LEXIS 55787 (E.D. Cal.

9

July 27, 2006)..................................................................................17, 19, 20, 21

10

*A-Z Int'l v. Phillips*, 323 F.3d 1141 (9th Cir. 2003)...................................................7

11

*Chou v. Univ. of Chi. & Arch Dev. Corp.*, 254 F.3d 1347 (Fed. Cir. 2001) ........9, 11

12

*Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738 (9th Cir. 1979) ....22

13

*Clements v. Airport Authority of Washoe County*, 69 F.3d 321 (9th Cir. 1995)......15

14

*Competitive Technologies v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118 (N.D. Cal. 2003) 13

15

*Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) ........................17

16

*Costantini v. Trans World Airlines*, 681 F.2d 1199 (9th Cir. 1982) ........................16

17

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986)......17

18

*Fina Oil & Chem. Co. v. Ewen,* 123 F.3d 1466 (Fed.Cir.1997)................................9

19

*Gatdula v. CRST Int'l, Inc.*, 2011 U.S. Dist. LEXIS 13706 (E.D. Cal. Feb. 8, 2011)

20

...................................................................................................................19

21

*Graham-Sult v. Clainos*, 756 F.3d 724 (9th Cir. 2014)............................................12

22

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ...............................17

23

*Kurtz v. Interlius, Inc.*, 2011 U.S. Dist. LEXIS 101922 (E.D. Cal. Sept. 9, 2011)..20

24

*Larson v. Correct Craft, Inc.*, 569 F. 3d 1319 (Fed. Cir. 2009)................................9

25

*Lenk v. Monolithic Power Sys., Inc.*, No. 16-CV-02625-BLF, 2017 U.S. Dist.

26

LEXIS 70156, 2017 WL 1832198 (N.D. Cal. May 8, 2017)...............................15

27

*Mansell v. Otto*, 108 Cal. App. 4th 265 (2003) ......................................................12

28

*Mussetter Distrib. v. DBI Bev. Inc.*, 2009 U.S. Dist. LEXIS 61013 (E.D. Cal. July 8,

iv

**ludwig**APC

AN INTELLECTUAL PROPERTY FIRM

2009)..............................................................................................17, 20

*Nolen v. Lufkin Indus.*, 469 F. App'x 857 (Fed. Cir. 2012) ......................................11

*Olsen v. Harbison*, 191 Cal. App. 4th 325 (2010)....................................................12

*Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982)..........17, 22

*Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949 (9th Cir. 1968) .......................21

*Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (Fed Cir. 2003)..............7

*Pochiro v. Prudential Ins. Co of America*, 827 F.2d 1246 (9th Cir. 1987)..............13

*Ramachandran v. Best Best & Krieger*, No. 20-cv-03693-BLF, 2021 U.S. Dist.
    LEXIS 23756 (N.D. Cal. Feb. 8, 2021) ...............................................................15

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ...............................7

*Schreiber Foods, Inc v. Beatrice Cheese, Inc.*, 402 F.3d 1198 (Fed. Cir. 2005) .......7

*Shukh v. Seagate Tech., Ltd. Liab. Co.*, 803 F.3d 659 (Fed. Cir. 2015).............11, 12

*Stay-Dri Continence Mgmt. Sys., LLC v. Haire*, No. 2:08-CV-01386-JAM-EFB,
    2008 U.S. Dist. LEXIS 69135 (E.D. Cal. Sep. 10, 2008)....................................21

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ...........................................17

*Taylor v. AlliedBarton Sec. Serv. LP*, 2014 WL 1329415 (E.D. Cal. Apr. 1, 2014)23

*Taylor v. Sturgell*, 553 U.S. 880 (2008) .................................................................15

*Trend Micro Inc. v. RPost Holdings, Inc.*, No. 13-cv-05227-WHO, 2014 U.S. Dist.
    LEXIS 47946 (N.D. Cal. Apr. 7, 2014) ...............................................................11

*United States v. Haytian Republic*, 154 U.S. 118 (1894)........................................15

*Van Dusen v. Barrack*, 376 U.S. 612 (1964)...........................................................17

*W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189 (9th Cir. 1997) ...........................15

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003)....................7

*Warth v. Seldin*, 422 U.S. 490 (1975)........................................................................7

**Statutes**

26 U.S.C. § 7701(b)(1)(A)(i) .....................................................................................18

28 U.S.C. § 1291(d) ...................................................................................................15

28 U.S.C. § 1391(b)(2) ...............................................................................................15



28 U.S.C. § 1391(b)(1) ............................................................................. 14, 15

28 U.S.C. § 1391(b)(2) ............................................................................. 14, 15

28 U.S.C. §§ 1391(c)(1)-(2) ...........................................................................15

28 U.S.C. § 1404(a) ................................................................................. 13, 14

35 U.S.C. § 256............................................................................................... 7

Fed. R. Civ. Proc. 12(b)(1) ............................................................................ 6

Fed. R. Civ. Proc. 13(a) ............................................................................ 2, 10



POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO DISMISS OR TRANSFER VENUE

Defendant TELEPORT MOBILITY, INC. ("Teleport") respectfully submits the following Memorandum of Points and Authorities in Support of its Renewed Motion to Dismiss or, in the alternative, Transfer the above-entitled action, filed by Plaintiff KRZYSZTOF SYWULA ("Sywula"), to the Northern District of California.[1]

## I.    INTRODUCTION

This case is but the latest example of the exasperating procedural gamesmanship Sywula seems to relish.  In fact, it is the third piece of active, ongoing federal litigation concerning the same parties and the same issues, not to mention a related arbitration matter, which also involves the same parties and the same issues. In the case at bar, Sywula not only lacks standing to sue for a correction of inventorship of certain patents he assigned to Teleport, he is also in violation of the prohibition against claim splitting, for seeking identical relief, against identical parties at the same time, in multiple courts.  As a result, this Court lacks subject matter jurisdiction over Sywula's claim and should dismiss this case, in its entirety.

Alternatively, in the unlikely event this Court does not grant Teleport's motion to dismiss, a transfer is appropriate, because this case belongs in the Northern District of California, where the parties' dispute began, not divided piecemeal among

---

[1] Sywula did not oppose Teleport's original motion to dismiss or transfer. Teleport only files this motion now out of an abundance of caution and to forestall any specious argument that it did not respond to the First Amended Complaint. However, Teleport remains of the position that this Court can dispose of this entire case for lack of standing based on its original motion and should do so. See, Dkt. # 22. After filing a Rule 12(b)(1) motion to dismiss for lack of standing, "defendant(s) should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." *Taitt v. IRS*, Civil Action No. 04-CV-71092-DT, 2004 U.S. Dist. LEXIS 17292, at *4 n.5, 94 A.F.T.R.2d (RIA) 2004-5650 (E.D. Mich. Aug. 2, 2004), quoting 6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1476, p. 558 (1990).



disparate forums in furtherance of Sywula's weaponization of the state and federal court systems.  At the heart of these proceedings lies the question of inventorship of certain issued patents and pending utility patent applications held by Teleport and a related business named Northern Lights, LLC, as well as resulting tort and contract claims springing from the underlying controversy.  Such issues also form the basis of the earlier-filed matter of *Teleport Mobility, Inc. et al. v. Sywula*, No. 21-cv-00874 (N.D. Cal.), wherein plaintiffs seek damages and declaratory and injunctive relief from Sywula, a co-founder and disgruntled former employee of Teleport.  Similarly, the same parties, patents, allegations, and claims are also at issue in *Sywula v. DaCosta, et al*., No. 21-cv-01450-BAS-AGS (S.D. Cal.), filed by Sywula on August 15, 2021.  All three matters involve the same fundamental set of facts, albeit colored by each side's perspective.  Yet, rather than litigate his grievances in the Northern District of California with a court readily familiar with the relevant claims, Sywula elects instead to clog the courts with strategic nuisance lawsuits, the goal of which is to avoid the merits of the parties' dispute, while inflicting as much harm on Defendant as possible.  Enough is enough.

In light of the substantial overlap between the claims and issues in these cases, and the identity of the parties, if the Court is not inclined to issue a dismissal, it is necessary and proper to transfer this case to the Northern District under 28 U.S.C. § 1404(a) and the first-to-file rule.  Despite successfully compelling arbitration of some of the claims in the pending action in the Northern District, Sywula vexingly filed two new court actions in San Diego Superior Court and the Southern District of California, without notifying either the Southern District of the related case or the Northern District of the pendency of other actions as obligated under both courts' local rules. Following removal of the state matter by Teleport and Northern Lights, both of Sywula's new cases are now before the Southern District. See, Dkt.# 6 (Defendants' Notice of Related Cases). The dispute between the parties does not require three separate forums to reach resolution.  The Court should refuse Sywula's

incessant forum shopping, claims splitting, gamesmanship, and wasting of judicial resources and Teleport's resources, by transferring this case to the Northern District, where Sywula can explain to Judge Illston why he is fighting to be back in court after demanding to be in arbitration.[2]

## II.    FACTUAL BACKGROUND

### A.    The First-Filed Lawsuit in the Northern District

On February 3, 2021, Teleport and Northern Lights filed a complaint against Sywula in the Northern District of California, which matter was ultimately assigned to Judge Susan Illston ("*Teleport I*").  Declaration of Frederic G. Ludwig ("Ludwig Decl.") Ex. 1. In their nine-count complaint, Teleport and Northern Lights alleged claims for relief against Sywula for misappropriation of trade secrets (in violation of 18 U.S.C. §§ 1832-1836(b) and Cal. Civ. Code § 3246 *et seq*.), breach of contract, violation of the Comprehensive Computer Data Access and Fraud Act (Cal. Penal Code § 502), violation of the Lanham Act for trademark infringement and unfair competition (15 U.S.C. § 1125), conversion, intentional interference with contract, breach of fiduciary duty, unfair business practices (violation of Cal. Bus. & Prof. Code § 17200 *et seq*.), and declaratory relief as to the inventorship of patents, arising out of Sywula's unfounded claims of patent inventorship and subsequent misappropriation of Teleport's and Northern Lights trade secrets in violation of Sywula's employment agreement with Teleport.  Ludwig Decl., Ex. 1. ¶¶ 31-44.

Judge Illston granted Teleport and Northern Lights' request for preliminary injunction against Sywula on March 7, 2021. *Id.* Ludwig Decl., Ex. 2.  Following

---

[2] Pursuant to the claims-splitting doctrine, "Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007). And to the extent Sywula had counterclaims, he would have been required to raise them in *Teleport I.* See, Fed. R. Civ. Proc. 13(a).

3

issuance of the injunction, Sywula moved to dismiss and compel arbitration. *Id.* Ludwig Decl., Ex. 3.  The court in the Northern District of California granted Sywula's motion to compel arbitration on June 4, 2021, staying the case but retaining jurisdiction over the equitable claims and keeping the preliminary injunction in place. Ludwig Decl., Ex. 4 (Order Compelling Arbitration). [3]  Relevant here is the fact that during proceedings before Judge Illson, Sywula argued for the joinder of Alexis DaCosta as a party, and also raised the prospect of asserting employment claims against Teleport and Northern Lights and rescinding the employment agreement, two claims he also alludes to, here. Ludwig Decl., Exs. 5, 6.

### B.    The Current Southern District of California Lawsuits

Rather than arbitrate the parties' dispute, as he aggressively advocated in *Teleport I*, Sywula instead filed the matter of *Sywula v. Alexis DaCosta, Teleport Mobility, Inc., Northern Lights, LLC, Melville DaCosta, Russel Davis, and Vincent Coletti*, Case No. 37-2021-00034541-CU-FR-CTL, Superior Court of California, County of San Diego, on August 12, 2021 (the "State Court Action").  Ludwig Decl. Ex. 7, Dkt. #1.  In his complaint, Sywula advanced seventeen (17) separate causes of action, with the crux of his allegations being the dubious contention that he is the rightful inventor of technologies owned by Teleport and Northern Lights. Ludwig Decl. Ex. 7, ¶¶ 15-21; 27-29; 121-122.  Given the federal question of inventorship under 35 U.S.C sections 116 and 256, Teleport and Northern Lights removed the State Court Action on August 16 ("*Teleport II*").  Ludwig Decl. Ex. 8.

Days after filing the State Court Action, Sywula lodged the instant complaint, styled *Sywula v. Alexis DaCosta, Vincent Coletti, Teleport Mobility, and Does 1-20*, Case No. 21-cv-01450-BAS-AGS, on August 15, 2021, again alleging he was the rightful inventor of technologies owned by Teleport and Northern Lights ("*Teleport*

---

[3] Teleport and Northern Lights initiated arbitration proceedings with JAMS in San Diego, on June 11, 2021, in the matter entitled *Teleport Mobility, Inc., et al. v. Sywula*, JAMS Case No. 1240024720. Ludwig Decl. ¶ 8.



*III*"). Dkt #1. Specific patents referenced by Sywula, wherein he asserted a right to be named as an inventor, included U.S. Patent Nos. 11,087,250, 11,087,252, and 11,087,253 (the "patent-in-suit").

The claims in Sywula's new cases are substantially related to one another and those in *Teleport I*. In both *Teleport II* and *Teleport III*, Sywula puts forth the identical allegation that he "was the inventor, creator, and developer of the ride-sharing application technologies, including the source code, algorithms, architecture and related technologies" but that Defendant "[Alexis DaCosta] continued to insist that he is the inventor." Ludwig Decl., Ex. 7 (*Teleport II*, Dkt. #1), ¶ 27; *Teleport III*, Dkt. #15, ¶ 49. Sywula also invokes the same employment agreement under his breach-of-contract claim in *Teleport II* as is at issue in *Teleport I* and rests his breach-of-fiduciary duty claim against the officers and directors of Teleport in *Teleport II* on conduct referenced by the plaintiffs in *Teleport I*. Ludwig Decl., Ex. 1. As such, all the claims in the current lawsuits arise out of the same common nucleus of facts as in *Teleport I*; namely, a dispute over the inventorship of patents resulting in the dissolution of a business relationship and the ancillary claims that stem from such a break-up.[4]

### C. All Defendants Are Residents of California, and Defendants DaCosta and Teleport Reside in the Northern District

None of the Defendants in *Teleport II* or *Teleport III* reside outside California.

---

[4] In addition, some, if not all, of the claims in *Teleport II* and *Teleport III* are compulsory counterclaims, which should have been brought in *Teleport I*. Federal Rules of Civil Procedure Rule 13(a) provides:

> (1) *In general*. A pleading must state as a counterclaim any claim that-at the time of its service-the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.



Defendant Alexis DaCosta resides in Santa Clara, California. Declaration of Alexis DaCosta ("DaCosta Declaration") ¶4. Both Teleport and Northern lights also maintain their headquarters in Sunnyvale and Santa Clara (*Id.*¶5), and Sywula admits Teleport maintains offices in California. Dkt. # 15, ¶ 4. Sywula further concedes Defendant Vincent Colletti resides in California. *Id.* ¶ 3.

### D.     Sywula's Assignment of Intellectual Property Rights

Sywula entered into two agreements relevant to the present controversy. First, on August 22, 2016, Sywula signed a Consulting Agreement with DaCosta and Coletti. Ludwig Decl., Ex. 1 (*Teleport I*, Dkt. # 1, Complaint, ¶ 21-22). According to that contract, Sywula agreed to develop technical software and assist DaCosta and Coletti with drafting patents relating to the developed software. Ludwig Decl., Ex. 9 (*Teleport I*, Dkt. # 1-1, Ex. 1). Pursuant to the Consulting Agreement, Sywula assigned any intellectual property he developed in the course of his duties to DaCosta and Coletti. *See id.* Then, after the parties formed Teleport and its subsidiary, Northern Lights, Sywula entered into an Employee Proprietary Information and Inventions Agreement ("Employee Agreement") with Teleport on November 20, 2019, whereby he again assigned all rights to any intellectual property he created to Teleport. Ludwig Decl., Ex. 1 (*Teleport I*, Dkt. # 1, Complaint, ¶¶ 6, 8; Dkt. # 1-1, Ex. 6). Neither the Consulting Agreement nor the Employee Agreement provided for any additional, ongoing compensation or renumeration to Sywula, based upon or following the assignment of rights contained there, such as a license fee or royalty.

## III.   ANALYSIS

### A.     Motion to Dismiss for Lack of Standing Under Rule 12(b)(1)

Sywula's lack of standing and his propensity for claim splitting offer ample bases to dismiss this case, in its entirety. Federal district courts are of limited jurisdiction and they: "may not grant relief absent a constitutional or valid statutory grant of jurisdiction;" and are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145

6

(9th Cir. 2003) (internal quotations omitted); Fed. R. Civ. Proc. 12(b)(1). Challenges to a plaintiff's standing are properly brought as Rule 12(b)(1) motions. See *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003). This applies equally to patent cases, in which "'plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit' to assert standing." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (quoting *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309-10 (Fed Cir. 2003)). If a court finds that "'the original plaintiff lacked Article III initial standing, the suit must be dismissed'" for lack of jurisdiction "'and the jurisdictional defect cannot be cured.'" *Id.* (quoting *Schreiber Foods, Inc v. Beatrice Cheese, Inc*., 402 F.3d 1198, 1203 (Fed. Cir. 2005)). A plaintiff bears the burden of establishing standing for federal court jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 518 (1975) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a property party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.") Here, Sywula cannot meet this burden.

Teleport need not confine its arguments to the four corners of Sywula's complaint. Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. A challenge to subject matter jurisdiction may be considered a factual attack when the attack relies on extrinsic evidence, as opposed to the pleadings alone, to contest the truth of the allegations. *Id*.

### 1.     The Filing of An Amended Complaint Does not Moot Teleport's Original Motion to Dismiss

Because Teleport's standing challenge attacks not the face of Sywula's

pleadings, but rather the actual facts, the filing of a First Amended Complaint is irrelevant to this Court's disposition of the pending motion. It is proper to bring a motion to dismiss under Rule 12(b)(1) attacking the factual basis of Sywula's jurisdictional allegations. *Fluordx LLC v. Quidel Corp.*, No. 18-CV-2866 JLS (NLS), 2019 U.S. Dist. LEXIS 162441, at *5-6 (S.D. Cal. Sep. 23, 2019), citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993). When a defendant's motion, such as Teleport's, "denies or controverts [plaintiff]'s allegations of jurisdiction[,] . . . the allegations of the complaint are not controlling . . . and only uncontroverted facts are accepted as true." *Id.* When the defendant disputes plaintiff's allegations concerning ownership of the patents-in-suit or standing to sue, plaintiff's "allegations alone" concerning standing "are insufficient to meet the [plaintiff]'s burden to establish jurisdiction." *See 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378 (Fed. Cir. 2012) (quoting *Cedars-Sinai*, 11 F.3d at 1584). This Court therefore "must satisfy itself that there is a factual basis for it to exercise jurisdiction, and in doing so it 'may review evidence extrinsic to the pleadings, including affidavits and deposition testimony.'" *Id.*; *see also Max Sound Corp. v. Google, Inc.*, 147 F. Supp. 3d 948, 952 (N.D. Cal. 2015) ("Since the facts underlying the controverted jurisdictional allegations are in dispute, the court is not restricted to the face of the pleadings.") (quotations omitted). Therefore, lodging an intervening amended complaint does not change the focus of this Court's analysis; it is the facts that matter, not the allegations.

### 2. Without an Ownership Interest in the Patents-in-Suit, Sywula Lacks Standing to Sue

Sywula has no right to request a correction of inventorship of any of the patents-in-suit, because he assigned away his rights to DaCosta and Teleport. The Patent Act specifies:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any



deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256. Put another way, section 256 "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." *Larson v. Correct Craft, Inc.*, 569 F. 3d 1319, 1324 (Fed. Cir. 2009), quoting *Fina Oil & Chem. Co. v. Ewen,* 123 F. 3d 1466, 1471 (Fed.Cir.1997).

A prerequisite to an action brought pursuant to section 256 is standing. *Larson*, 569 F. 3d at p. 1325. Standing, in the context of correcting inventorship under section 256, requires a plaintiff to demonstrate injury, causation, and redressability. *Chou v. Univ. of Chi. & Arch Dev. Corp.*, 254 F.3d 1347, 1358-1359 (Fed. Cir. 2001). When a plaintiff affirmatively transfers titles to his patents to a defendant, "he stands to reap no benefit from a preexisting licensing or royalties arrangement." *Larson*, 569 F. 3d at 1326. Such a plaintiff, therefore, lacks standing to sue for correction of inventorship. *Id*. at 1327. Precisely the same rules apply to Sywula and the patents-in-suit. The Consulting Agreement and the Employee Agreement plainly function to assign away any rights Sywula may have had in and to the patents-in-suits, as well as any other inventions or forms of intellectual property, to DaCosta and Teleport. With no ownership whatsoever, Swyula lacks standing to sue for correction of inventorship under section 256. Defendants expect this Court will agree and dismiss this case for lack of subject matter jurisdiction.

1

### a)   *Sywula Lacks Standing Based on Reputational Harm*

2

3    Sywula's FAC does not remedy his lack of standing to sue.  Filing an amended
4    complaint does not cure an underlying subject matter jurisdiction defect. *Abraxis*
5    *Bioscience, Inc.*, 625 F.3d at 1366 n.3.  A detailed review of Sywula's updated
6    pleadings reveals no new factual allegations in support of standing.  Even if Sywula's
7    new complaint did include additional allegations, Teleport's attack is factual in
8    nature, not facial.  Such hypothetical new facts would be of no moment, since the
9    Court's review of the matter is not restricted to the face of the pleadings.  The only
10   evidence before the Court is that proffered by Teleport and it unmistakably
11   demonstrates Sywula has no standing to sue.  This Court should so rule.

12   Sywula cannot bootstrap his way to Article III standing on the basis of any
13   supposed reputational harm.  Only a showing of "concrete and particularized
14   reputational injury can give rise to Article III standing." *Shukh v. Seagate Tech., Ltd.*
15   *Liab. Co.*, 803 F.3d 659, 663 (Fed. Cir. 2015).  Sywula makes no such showing of
16   "concrete and particularized reputational injury."  Instead, in the FAC he contends
17   his reputational harm is based in part on "his deprivation of the public recognition
18   and vocational leverage that comes from being named as an inventor on a patent in
19   one's field;" and "harm to his personal reputation… [resulting from]" police reports
20   and a civil harassment restraining order against him."[5] Dkt. # 15, ¶¶ 75-76.  These
21   statements   fail   to   demonstrate   anything   remotely   close   to   "concrete"   or

22

23

_____

24   [5] Interestingly, Sywula previously made no mention of this sort of supposed
25   reputational harm in his original complaint, but rather argued reputational damage
     existed because of the alleged negative impact the inventorship issue had on his L-
26   1B visa.  Dkt. # 1, ¶ 48.  However, there are no references in the First Amended
     Complaint to an L-1B visa or constituent harm.  Dkt # 15.  In fact, Sywula now
27   contends he is a U.S. resident.  *Id*. ¶ 1. Such inconsistencies call into question
     Sywula's credibility, as a whole.
28



"particularized" harm. The only evidence before the Court is that proffered by Teleport and it unmistakably demonstrates Sywula has no standing to sue.

The simple fact is, Sywula lacks standing to sue under section 256 and this Court should dismiss this case, in its entirety.

### 3.      Sywula's Allegations Concerning the Enforceability of Underlying Assignment Agreements Are Irrelevant

Sywula cannot feign standing by arguing that the assignments in the Consulting Agreement and Employee Agreement are invalid and unenforceable. A party does not have standing based on the possible rescission of an assignment agreement. *Trend Micro Inc. v. RPost Holdings, Inc.*, No. 13-cv-05227-WHO, 2014 U.S. Dist. LEXIS 47946, at *24 (N.D. Cal. Apr. 7, 2014), citing *Nolen v. Lufkin Indus.*, 469 F. App'x 857 (Fed. Cir. 2012) (holding that plaintiffs lacked standing to sue for infringement of a patent they did not own, where their claims were "expressly . . . . contingent on the district court first rescinding the Assignment Agreements and awarding ownership of the assigned patents to Plaintiffs"). This rule controls analysis of Sywula's standing argument, which relies on a prerequisite rescission of the underlying invention assignments. Unless or until a court so rules, Sywula has no ownership interest and, therefore, no standing. Teleport expects this Court will agree and grant Teleport's pending motion to dismiss.

### 4.      Sywula Lacks Standing Based on Financial Harm

Without producing any evidence, Sywula alleges in the FAC that he possesses a valid financial interest in the patents-in-suit, based on his ownership interest in Teleport, but he is wrong. FAC ¶ 72. Sywula presents no evidence of "a concrete financial interest in the [patents-in-suit]" or even "an interest less than ownership." *Chou v. Univ. of Chi. & Arch Dev. Corp.*, 254 F.3d 1347 (Fed. Cir. 2001). Unlike the plaintiff in *Chou,* whose equity interest in a putative business depended upon her status as a named inventor, Sywula already owns shares of Teleport. Whether he is named as an inventor or not changes nothing and entitles him to no more than he

1   already has; Swyula presents no evidence to the contrary.  Because Sywula identifies

2   absolutely no facts or law in support of any purported financial interest in the patents

3   or attendant harm, this Court should rule he lacks standing and dismiss his case.

### 5.   Sywula Lacks Standing Based on Reputational Harm

5         Similarly,  without  producing  any  evidence,  Sywula  alleges  in  the  First

6   Amended Complaint that he suffers purported reputational harm.  Only a showing of

7   "concrete and particularized reputational injury can give rise to Article III standing."

8   *Shukh v. Seagate Tech., Ltd. Liab. Co.*, 803 F.3d 659, 663 (Fed. Cir. 2015).  Sywula

9   makes no such showing of "concrete and particularized reputational injury."  Instead,

10  he stakes his claim for reputational harm on a state court stayaway order obtained by

11  DaCosta against him and potential issues surrounding his and job at Intel.  Both

12  notions fail.

13        DaCosta's statements to the court in the matter of *DaCosta v. Sywula*, Case

14  No. 21CH009837 (Santa Clara Super. Ct., filed Feb. 1, 2021) are protected by the

15  litigation privilege and not actionable.  Statements and publications made in a judicial

16  proceeding are privileged.  Cal. Civ. Code § 47(b).  "California's litigation privilege

17  applies to any communication '(1) made in judicial or quasi-judicial proceedings; (2)

18  by litigants or other participants authorized by law; (3) to achieve the objects of

19  the litigation;  and  (4)  that  ha[s]  some  connection  or  logical  relation  to  the

20  action.'"  *Graham-Sult  v.  Clainos*,  756  F.3d  724,  741  (9th  Cir.  2014)

21  (quoting *Mansell v. Otto*, 108 Cal. App. 4th 265, 271 (2003)).  "The privilege

22  'immunizes defendants from virtually any tort liability (including claims for fraud),

23  with  the  sole  exception  of  causes  of  action  for  malicious  prosecution.'"  *Id.*,

24  quoting *Olsen v. Harbison*, 191 Cal. App. 4th 325, 333 (2010).  Accordingly, Sywula

25  cannot use these statements as a basis for any supposed reputational harm.

26        Similarly, Sywula cannot establish reputational harm flowing from any issue

27  pertaining to his specialized knowledge in his field as a highly skilled software

28  engineer and developer.  Dkt. # 15, ¶¶ 73-79.  These allegations fail to demonstrate

ludwig APC
AN INTELLECTUAL PROPERTY FIRM

anything remotely close to "concrete" or "particularized" harm. With no additional evidence and no opposition brief from Sywula, this Court may decide the matter in Teleport's favor and grant the pending motion to dismiss for lack of standing.

**6.     Since the Claims in This Case Are Properly Construed as Compulsory Counterclaims That Belong in *Teleport I*, Dismissal Is Appropriate for Lack of Subject Matter Jurisdiction**

Even if Sywula had standing, the claims in the case at bar are compulsory counterclaims to *Teleport I*, which Sywula should have raised in the Northern District of California. The Federal Rule provides, "[a] pleading must state as a counterclaim any claim that - at the time of its service – the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. Rules Civ. Proc. 13(a). The Ninth Circuit holds that causes of action in one case are properly deemed compulsory counterclaims to a previously filed action if the facts alleged in both complaints are "inextricably intertwined[.]" *Pochiro v. Prudential Ins. Co of America*, 827 F.2d 1246, 1250 (9th Cir. 1987) (applying Arizona state law which mirrors Rule 13(a)). The test for determining whether a counterclaim is compulsory is a flexible one, as explained in *Competitive Technologies v. Fujitsu Ltd*., 286 F. Supp. 2d 1118, 1135-6 (N.D. Cal. 2003):

> To determine if claims arise out of the same transaction or occurrence, courts in the Ninth Circuit ask whether "the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all of the issues be resolved in one lawsuit." [citation omitted] "The test is a `flexible' one taking into account all of the circumstances in light of the purposes of Rule 13(a)." [citation omitted]. Among the factors courts consider in determining whether the test is met is whether "the facts necessary to prove the two claims substantially overlap, [and whether] the collateral estoppel effect of ... the first action would preclude [the claims from being brought in a later action]."[citation omitted].



POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO DISMISS OR TRANSFER VENUE

Case No. 3:21-cv-01450-BAS-AGS

A cursory review of the pleadings in *Teleport I*, *II*, and *III* reveals just how extensive the overlap among the three cases really is, meaning Sywula was required to present his grievances in this matter – and those of *Teleport II* – as counterclaims against the plaintiffs in *Teleport I*. As such, this Court should conclude it lacks subject matter jurisdiction over the claims at bar.

Examples of overlap in the *Teleport* cases abound:

- *Teleport I* contains a claim for breach of the Employee Agreement (Count III). Dkt. # 1, pp. 13:25-14:13. *Teleport II* contains a cause of action for breach of contract of the PIIA contract (Cause of Action 2). Ludwig Decl., Exs. 1, 7.

- *Teleport I* includes a claim for declaratory judgment regarding the inventorship/ownership of Teleport's pending patent applications. Ludwig Decl., Ex. 1(*Teleport I*, Dkt. # 1, ¶¶ 21:18-22:16). *Teleport II* and *Teleport III* both seek virtually identical declaratory relief regarding the inventorship/ownership of the very same issued patents and pending patent applications asserted in *Teleport I*. Dkt. # 1; Ludwig Decl., Ex. 7 (*Teleport II*, Dkt. # 1, ¶¶ 18:22-21:18).

- *Teleport I* features allegations concerning the business relationship, development of intellectual property, and operations of Teleport Mobility and Northern Lights. Ludwig Decl., Ex. 1 (*Teleport I*, Dkt. # 1, ¶¶ 3:18-11:22). *Teleport II* presents Sywula's interpretation of the same *Teleport I* allegations concerning the business relationship, development of intellectual property, and operations. Ludwig Decl., Ex. 7 (*Teleport II*, Dkt. # 1, ¶¶ 4:16-15:16).

While each complaint describes the allegations from the applicable plaintiff's own perspective, the pleadings unmistakably cover the same business relationship, over the same period of time, with the same parties. *Teleport II* and *Teleport III* arise out of the same transaction(s) and occurrence(s) as alleged in *Teleport I*, and this Court

14

1   should construe them as compulsory counterclaims.  Plaintiffs anticipate this Court

2   will and dismiss the case, pursuant to Rule 12(b)(1).

3                 **7.      Sywula Violates the Rule Against Claim Splitting**

4            Not only do the claims found in *Teleport II* and *Teleport III* amount to

5   compulsory counterclaims, which Sywula should bring in *Teleport I*, the new cases

6   (present case included) violate the rule against claim splitting.  "Plaintiffs generally

7   have no right to maintain two separate actions involving the same subject matter at

8   the same time in the same court and against the same defendant." *Adams v. California*

9   *Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), *rev'd on other grounds*,

10  *Taylor v. Sturgell*, 553 U.S. 880, 904, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008)

11  (internal quotations and citations omitted); See also *Ramachandran v. Best Best &*

12  *Krieger*, No. 20-cv-03693-BLF, 2021 U.S. Dist. LEXIS 23756, at *22-23 (N.D. Cal.

13  Feb. 8, 2021).  A main purpose behind the rule preventing claim splitting is to protect

14  the defendant from being harassed by repetitive actions based on the same claim."

15  *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995)

16  (internal quotations and citations omitted). "There would be no end to litigation if

17  such a practice were permissible." *United States v. Haytian Republic*, 154 U.S. 118,

18  125, 14 S. Ct. 992, 38 L. Ed. 930 (1894). The claims do not have to be identical in

19  both lawsuits for the claim-splitting doctrine to apply. *Lenk v. Monolithic Power Sys.*,

20  *Inc.*, No. 16-CV-02625-BLF, 2017 U.S. Dist. LEXIS 70156, 2017 WL 1832198, at

21  *3 (N.D. Cal. May 8, 2017), *aff'd*, 754 F. App'x 554 (9th Cir. 2018) ("[r]es judicata,

22  also known as claim preclusion, bars litigation in a subsequent action of any claims

23  that were raised or could have been raised in the prior action.") (citing *W. Radio*

24  *Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)).  Ignoring more than

25  100 years of Supreme Court precedence from *Haytian Republic*, along with myriad

26  other lower court decisions, Sywula launches a barrage of duplicative litigation

27  against Defendants.  The Court should use this opportunity to end such harassment,

28  now.

1    The claims in *Teleport II* and *III* qualify as duplicative. Courts use the claim

2    preclusion test to determine if lawsuits are duplicative. *Adams*, 487 F.3d at 688.

3    "[T]he Court examines whether the causes of action and relief sought, as well as the

4    parties or privies to the action, are the same." *Id.* The first question entails a further

5    four-prong transaction test that asks: (1) whether rights or interests established in the

6    prior judgment would be destroyed or impaired by prosecution of the second action;

7    (2) whether substantially the same evidence is presented in the two actions; (3)

8    whether the two suits involve infringement of the same right; and (4) whether the two

9    suits arise out of the same transactional nucleus of facts. *Id.* (citing *Constantini v.*

10   *Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982)). "The last of these

11   criteria is the most important." *Constantini*, 681 F.2d at 1202. For the same reasons

12   Sywula's claims in *Teleport II* and *Teleport III* are really nothing more than

13   compulsory counterclaims that belong in *Teleport I*, so too are *Teleport II* and

14   *Teleport III* examples of improper claims splitting. In each instance: (1) the rights

15   and interests of any one of the parties in any one of the three *Teleport* cases could be

16   destroyed or impaired by prosecution of any of the other *Teleport* cases; (2) because

17   the claims are either identical to one another or mirror images of those in *Teleport I*,

18   the parties will present same evidence in all three actions; (3) the three suits involve

19   infringement of the same right; and (4) the three suits arise out of the same

20   transactional nucleus of facts. Because *Teleport II* and *Teleport III* are largely

21   duplicative of one another and *Teleport I*, this Court should dismiss the case at bar,

22   finding that Sywula is engaged in improper claim splitting, the sole purpose of which

23   is to harass Defendants.

24   **B.    Motion to Transfer to the Northern District of California**

25   In the unlikely event this Court chooses not to dismiss Sywula's complaint

26   under Rule 12(b)(1), it should transfer it, because federal law vests the Court with

27   broad discretion to send the instant matter to the Northern District of California. "For

28   the convenience of parties and witnesses, in the interest of justice, a district court



1    may transfer any civil action to any other district or division where it might have been

2    brought[.]" 28 U.S.C. § 1404(a). The purpose of this provision is "to prevent the

3    waste of time, energy and money" and "to protect litigants, witnesses and the public

4    against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S.

5    612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26,

6    27 (1960)) (internal quotations omitted). A district court has broad discretion to

7    "adjudicate motions for transfer according to an 'individualized, case-by-case

8    consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487

9    U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622); *Jones v. GNC Franchising,*

10   *Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

11          As shown below, all applicable factors weigh in favor of transfer.  The district

12   court must first determine whether the action is one that "might have been brought"

13   in the transferee forum. *See* 28 U.S.C. § 1404(a); *Am. Canine Found. v. Ben Sun*,

14   *D.M.V.*, 2006 U.S. Dist. LEXIS 55787, *8 (E.D. Cal. July 27, 2006). Once the court

15   finds venue proper, the court "consider[s] public factors relating to the interest of

16   justice and private factors relating to the convenience of the parties and witnesses."

17   *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.

18   1986). The "convenience" factors relevant here include: (1) plaintiff's choice of

19   forum; (2) the contacts relating to the plaintiff's cause of action in the chosen forum;

20   (3) the convenience of witnesses; and (4) ease of access to the evidence. *See*

21   *Mussetter Distrib. v. DBI Bev. Inc.*, 2009 U.S. Dist. LEXIS 61013, *9-*10 (E.D. Cal.

22   July 8, 2009); *Jones,* 211 F.3d at 498-99.  In addition, the first-to-file rule is a doctrine

23   of federal comity that permits a district court to decline jurisdiction over an action

24   when a complaint involving the same parties and issues has already been filed in

25   another district. *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th

26   Cir. 1982).  Because transferring this matter to Judge Illston's court, where the first-

27   filed *Teleport I* is still pending, would prevent the waste of time, energy and money

28   and protect litigants, witnesses and the public against unnecessary inconvenience and

expense, Teleport anticipates this Court will agree that transfer is appropriate.

### 1.    The Northern District of California Is a District in Which Sywula's Lawsuit "Might Have Been Brought"

Venue for *Teleport II* and *Teleport III* would be proper in the Northern District of California. A civil action may be brought in any district where "any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).  Venue is also proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2). A natural person is a resident of the district in which he or she is domiciled. 28. U.S.C § 1391(c)(1).

Here, all Defendants reside in California: A. DaCosta lives in Santa Clara; Teleport maintains a principal place of business in California; and V. Colletti likewise lives in California.  Thus, they are California residents.  28 U.S.C. §§ 1391(c)(1)-(2); 28 U.S.C. § 1291(d).[6]

Venue is proper in the Northern District of California for even more reasons. First, since all Defendants are residents of California, and A. DaCosta lives in the Northern District, venue is proper in the Bay Area pursuant to 28 U.S.C. section 1391(b)(1).  Additionally, venue is proper in the Northern District under 28 U.S.C. section 1391(b)(2), because Sywula and A. DaCosta worked in the Northern District such that a substantial part of the events giving rise to the claims occurred in the Northern District of California. DaCosta Decl. ¶¶ 4-7. It is also where the offices of Teleport and Northern Lights are located (*Id.*) and Sywula admits that he resided – or currently still does reside – in the Northern District before absconding to Poland. Dkt. # 1, ¶ 9; *Teleport II* Dkt. #1, ¶ 32, ll. 5-15 (Sywula describes his San Jose apartment as "Plaintiff's home.").  Since venue is appropriate in the Northern District

---

[6] Sywula admits Teleport maintains offices in California. Dkt. #15, ¶ 4. Plaintiff likewise does not dispute that A. DaCosta and V. Colletti are residents of California. *Id.* ¶¶ 2-3.



1  of California, the Court should agree Teleport satisfies this aspect of the transfer
2  analysis.

3      **2.     Significant Factors Weigh Heavily in Favor of Transferring**
4          **this Case to the Northern District**

5          *a)     The Case Should Be Transferred in the Interests of*
6          *Justice, Because of the Pendency of a Related Case;*
7          *Consolidation Will Promote Judicial Economy*

8          Transferring this case to the Northern District is in the interests of justice, so
9  as to allow Teleport to seek consolidation with *Teleport I* and *Teleport III*, each of
10 which concern the same parties and overlapping issues. The "interest of justice" is a
11 decisive factor, even if the other "convenience" factors weigh against transfer. *Am.*
12 *Canine Found.*, 2006 U.S. Dist. LEXIS. 55787 at * 9; *Gatdula v. CRST Int'l, Inc.*,
13 2011 U.S. Dist. LEXIS 13706, *8 (E.D. Cal. Feb. 8, 2011).  Teleport anticipates the
14 "interests of justice" will be especially decisive here, particularly in light of the
15 procedural gamesmanship favored by Sywula.

16         Consolidating *Teleport I, II*, and *III* is entirely feasible.  "The feasibility of
17 consolidation is a significant factor, although even the pendency of an action in
18 another district is important because of the positive effects it might have in possible
19 consolidation of discovery and convenience to witnesses and parties." *A.J. Industries,*
20 *Inc. v. U.S. Dist. Court for Cent. Dist.*, 503 F.2d 384, 389 (9th Cir. 1974) (internal
21 citations omitted); *see also Am. Canine Found.*, 2006 U.S. Dist. LEXIS 55787 at *9-
22 *10 (the pendency of a related case in the transferee forum is an important
23 consideration when determining the interests of justice). Indeed, the Supreme Court
24 recognizes that "[t]o permit a situation in which two cases involving precisely the
25 same issues are simultaneously pending in different District Courts leads to the
26 wastefulness of time, energy and money that [the federal transfer statute] was
27 designed to prevent." *Continental Grain Co*., 364 U.S. at 26. Thus, centralizing the
28 adjudication of two or more cases with common issues allows the parties to conserve

19

their resources and avoids inconsistent judgments, especially where the claims can be consolidated. *See Mussetter Distrib.*, 2009 U.S. Dist. LEXIS 61013 at *13; *Kurtz v. Interlius, Inc.*, 2011 U.S. Dist. LEXIS 101922, *5 (E.D. Cal. Sept. 9, 2011) (stating that "judicial resources are conserved when an action adjudicated by a court that has already 'committed judicial resources to the contested issues and is familiar with the facts of the case.'").  Such precepts control these proceedings and should guide the Court to grant the motion to transfer.

Slight variations among the parties and claims in *Teleport I*, *II*, and *III* are of no moment.  Differences in causes of action, named parties, or isolated facts do not preclude transfer. *See Am. Canine Found.*, 2006 U.S. Dist. LEXIS 55787 at * 10; *Mussetter Distrib.*, 2009 U.S. Dist. LEXIS 61013 at *13. In *American Canine Foundation*, the district court transferred a case challenging the constitutionality of a California statute from the Eastern District to the Northern District, because a pending case in the Northern District challenged the same statute, despite some differences in the causes of action pleaded and the named defendants. *Am. Canine Found.*, 2006 U.S. Dist. LEXIS 55787 at *10 (finding that "[i]t would save judicial resources, time and money to have these similar cases tried in the same district"). Teleport expects the Court will agree that the same is true here.

In fact, the pendency of related, earlier-filed *Teleport I* weighs heavily in favor of transfer and is a decisive component of the "interests of justice" factor. Indeed, if this case is transferred, Teleport intends to seek consolidation of the matters given the overlapping claims regarding inventorship and the parties' conduct. That this case involves ancillary claims should not preclude transfer because this matter, at its core, involves the same fundamental legal issues as *Teleport I*: the inventorship of the patents.

Transfer to the Northern District, with an eye toward consolidation with *Teleport I*, would therefore promote judicial economy. The parties and Judge Illston have already expended a substantial amount of time and resources litigating the

20

1   contested issues through a motion for Temporary Restraining Order, OSC re

2   Preliminary Injunction, motion to dismiss, and motion to compel arbitration. The

3   Northern District of California has already held two hearings and devoted significant

4   judicial resources to evaluating the very issues raised by Sywula in *Teleport II* and

5   *Teleport III*. Transferring these cases would allow for the adjudication of common

6   legal issues at the same time, avoiding the possibility of inconsistent judgments.

7   Thus, "the interest of justice 'weigh particularly heavily' in favor of transfer. *See Am.*

8   *Canine Found.*, 2006 U.S. Dist. LEXIS 55787 at *10.  This Court will no doubt agree

9   and grant the pending motion, accordingly.

10                    **b)     *Sywula's Choice of Forum Is Not Controlling***

11             Sywula's choice of forum is of little consequence. While a plaintiff's choice

12   of forum may ordinarily weigh against transfer, "[i]f the operative facts have not

13   occurred within the forum of original selection and that forum has no particular

14   interest in the parties or subject matter, the plaintiff's choice is only entitled to

15   minimal consideration." *Stay-Dri Continence Mgmt. Sys., LLC v. Haire*, No. 2:08-

16   CV-01386-JAM-EFB, 2008 U.S. Dist. LEXIS 69135 at *2 (E.D. Cal. Sep. 10, 2008)

17   (quoting *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968))

18   (internal quotations omitted). The complaints in *Teleport II* and *Teleport III* contain

19   no allegations indicating a particularized interest of any of the parties or subject

20   matter in the Southern District. Indeed, the offices of Teleport and Northern Lights

21   are located in Northern District.  Moreover, when Sywula alleges he was working on

22   the patents at issue, he was doing so with Teleport and A. DaCosta in the Northern

23   District where he and A. DaCosta lived and worked. DaCosta Decl. ¶¶ 4-7. Moreover,

24   the main parties and witnesses are located throughout California. Therefore, the

25   Court should conclude Sywula's choice of forum is not controlling.

26

27

28

### c)   The Convenience of the Parties and Witnesses and the Ease of Access to Evidence Further Weigh in Favor of Transfer

The convenience of the parties and witnesses also weighs in favor of transfer. When not in Poland, Sywula resides in the Bay Area. At some point he will have to return to the Northern District of California, where he is employed by Intel Corporation (DaCosta Decl. ¶7), or to retain his status as a U.S. Permanent Resident.[7] A. DaCosta, a key witness, resides there, as well. DaCosta Decl. ¶4. The offices of Teleport and Northern Lights are there, too. *Id*. ¶5. As such, much of the documentary evidence in both cases will be located in the Northern District. Therefore, this Court will likely find this factor weighs in favor of transfer.

### 3.   The First-to-File Rule Additionally Supports Transferring this Case to the Northern District

The "first-to-file" rule further supports transferring this case to the Northern District of California. A district court may decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. *Pacesetter Systems, Inc.*, 678 F.2d at 94-95 ("Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action."). The rule is meant to promote efficiency and sound judicial administration and "should not be disregarded lightly." *Id.* at 95 (quoting *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)). The court considers three factors when evaluating whether to apply the first-to-file rule: "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of all the issues." *Taylor*

---

[7] Sywula is not a U.S. citizen, but holds a "green card" as a U.S. Permanent Resident. Dkt. #15, ¶ 1. To maintain his permanent-resident status, Sywula is required to spend most of his time living in the U.S. 26 U.S.C. § 7701(b)(1)(A)(i).

*v. AlliedBarton Sec. Serv. LP*, 2014 WL 1329415, *7 (E.D. Cal. Apr. 1, 2014) (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625-26 (9th Cir. 1991)). Strict identity of the parties and identical issues in the cases are not required; rather, they need only be "substantially similar." *Id.* at *7-*8. All three factors are met here:

- *First*, the chronology of the actions supports transfer of this action because *Teleport I* was filed on February 3, 2021. See RFJN Ex. A. This action and *Teleport II* were filed roughly six months later on August 12 and 15, 2021. Thus, the first factor weighs in favor of applying the first-to-file rule.

- *Second*, Sywula and Teleport are parties to all three *Teleport* cases. Additional parties in this case involve officers and directors of Teleport and a co-inventor of some of the patents at issue. Notably, the record in *Teleport I* shows Sywula argued for joinder of A. DaCosta and that he intended to bring counterclaim against A. DaCosta in that case. Ludwig Decl. Exs. 5, 6.

- *Third*, the issues are substantially similar and, in the case of the Sywula's claims for declaratory relief and Teleport and Northern Lights' claims for declaratory relief in *Teleport I*, *II*, and *III*, they are identical. The parties also each allege breach of fiduciary duties by the other, and breach of the same employment contract. Moreover, given Judge Illston's order compelling some of these identical claims to arbitration, Judge Illston is in the best position to once again determine the arbitrability of the claims Sywula alleges here, which most rationale litigants would have brought as counterclaims in the very arbitration they sought to compel.[8]

As discussed *supra*, the central issue in both cases concerns the inventorship of the inventions owned by Teleport and/or Northern Lights. Transfer of this case

---

[8] See, JAMS Rule 9(c)("Within fourteen (14) calendar days of service of the notice of claim, a Respondent may submit to JAMS and serve on other parties a response and a statement of any affirmative defenses, including jurisdictional challenges, or counterclaims it may have.").

will avoid duplication of litigation and allow one court to adjudicate common legal issues. Thus, the Court should apply the first-to-file rule, decline to exercise its jurisdiction over this action, and transfer this case to the Northern District.

## IV.   CONCLUSION

For the foregoing reasons, Defendants Teleport respectfully requests that this Court grant its motion to transfer this case to the Northern District of California.

Dated: October 4, 2021                    Respectfully Submitted

                                          By: */s/ Andrew J. Kubik*
                                              Frederic G. Ludwig, III
                                              Andrew J. Kubik
                                              LUDWIG, APC
                                              Attorneys for Defendant
                                              TELEPORT MOBILITY, INC.



POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION TO DISMISS OR TRANSFER VENUE

Case No. 3:21-cv-01450-BAS-AGS