# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRZYSZTOF SYWULA,<br><br>                  Plaintiff,<br><br>  v.<br><br>ALEXIS DACOSTA, et al.,<br><br>                  Defendants. | Case No. 21-cv-01450-BAS-AGS<br><br>**ORDER GRANTING DEFENDANT TELEPORT MOBILITY, INC.'S RENEWED MOTION TO DISMISS (ECF No. 25)** |

## I. Introduction

This case is one of three actions stemming from a business venture to develop a software application for aggregating ride-sharing services. Plaintiff Krzysztof Sywula seeks to correct the inventorship of three patents, alleging that he created the underlying technology. The owner of the patents, Defendant Teleport Mobility, Inc., moves to dismiss. Teleport argues Sywula lacks standing to pursue an inventorship claim because he assigned away any interest he held in the patents. Indeed, in a separate action, Sywula is suing to undo those assignments as part of the parties' sprawling business dispute.

The Court agrees that Sywula lacks standing. His claim that he has a financial interest in correcting the patents hinges on relief this Court has no ability to provide—the voiding of assignments. Moreover, Sywula fails to allege a particularized reputational injury. Hence, the Court grants Teleport's motion to dismiss.

## II. Background

### A. The Software Venture and Consulting Agreement

Sywula is a software developer who has worked for Intel Corporation since 2015. (First Am. Compl. ("FAC") ¶¶ 11, 15, ECF No. 15.) In April 2016, Defendant Alexis DaCosta contacted Sywula to pitch an outside business venture. (*Id.* ¶ 12.) Sywula soon started working with DaCosta and Defendant Vincent Coletti on the venture. (*Id.* ¶ 13.) Together, they hoped to develop a mobile software application that aggregates ride-sharing options like popular services do for airfare and hotel offerings. (*Id.* ¶ 14.)

In August 2016, Sywula entered into a Consulting Agreement with DaCosta and Coletti to formalize their relationship. (Consulting Agreement, Ludwig Decl. ¶ 13, Ex. 9, ECF No. 25-10.)[1] The Consulting Agreement outlines that DaCosta and Coletti were "in the process of developing [] proprietary intellectual property related to a software application" and planned to submit a patent application. (*Id.* Recital A.) To that end, DaCosta and Coletti retained Sywula as a consultant "to assist in drafting a Patent Application" and to provide "any additional support necessary to develop" the intellectual property in light of his "skills, expertise, and experience in designing and developing a software application." (*Id.* Recital B, § 1.) In exchange, Sywula was promised equity in the entity DaCosta and Coletti planned to establish to own the intellectual property. (*Id.* § 2.)

The Consulting Agreement further provides that "[a]ny intellectual property, including patents, copyrights, trademarks, or trade secrets arising under this Agreement

---

[1] The Consulting Agreement and the Invention Agreement discussed below are also attached to DaCosta's declaration filed in opposition to Sywula's request for a temporary restraining order. (ECF Nos. 14-1 to 14-3.) There is no dispute these are authentic documents.

- 2 -

shall be assigned to [DaCosta and Coletti]." (Consulting Agreement § 6.c.) Sywula also agreed "to execute any documents necessary to perfect such assignment. (*Id.*)

Over the next few years, Sywula claims he developed the source code and algorithms for the venture's software application and wrote twenty-five domestic and international patent applications. (FAC ¶¶ 18–28.) Eventually, after other developments in the parties' relationship, Sywula and DaCosta formed Teleport to own and develop the mobile application. (*Id.* ¶ 30.) Sywula became Chief Technology Officer and obtained a large minority stake in Teleport. (*Id.* ¶¶ 31–32.) DaCosta is a director on Teleport's board, and Coletti allegedly works with DaCosta to control the entity. (*Id.* ¶¶ 33–34.)

### B. The Invention Agreement

As Teleport's CTO, Sywula was "primarily responsible for the creation, development, building, and implementation (and continuation of the same) of the software, source code, algorithms, architecture and related technologies and functionality for the ride-sharing application, including the related patents." (FAC ¶ 34.) Sywula also entered into Teleport's Employee Proprietary Information and Inventions Agreement ("Invention Agreement"). (Invention Agreement, Ludwig Decl. ¶ 13, Ex. 9, ECF No. 25-10.) He did so "[i]n consideration of . . . the compensation now and hereafter paid to [him]" from Teleport. (*Id.*)

The Invention Agreement covers "Inventions," which are broadly defined to include trade secrets, discoveries, designs, software, and other items. (Invention Agreement § 1.2.) Then, in a nutshell, the Invention Agreement: (1) excludes from its scope "Inventions . . . patented or unpatented, which [Sywula] made prior to the commencement of [his] employment with [Teleport]"; and (2) requires Sywula to assign to Teleport future Inventions "made or conceived or reduced to practice or learned by [him], either alone or jointly with others, during the period of [his] employment with [Teleport]," with limited exceptions. (*Id.* §§ 2.2–2.3.) Sywula did not list any past Inventions that should be excluded from the Invention Agreement. (*Id.* Ex. B.) So, Sywula promised to assign practically everything he developed with Teleport to the entity. (*See id.* § 2.3; FAC ¶ 20.)

### C. The Multi-Action Dispute

As its CTO, Sywula "performed extensive work for Teleport, including thousands of hours of labor." (FAC ¶ 42.) However, Teleport allegedly has not paid Sywula any compensation for his employment. (*Id.* ¶ 37.) Sywula thus claims Teleport has failed to meet its obligations under the Invention Agreement. (*Id.* ¶ 42.) He also claims Defendants have not reimbursed him for business expenses he incurred, including patent attorney fees and U.S. Patent and Trademark Office expenses. (*Id.* ¶ 44.)

Moreover, despite Sywula performing all the brainwork, DaCosta allegedly insists that he and Coletti—not Sywula—are the inventors of Teleport's patents. (FAC ¶ 49.) Sywula tried to correct this inventorship issue, including by requesting that he be added to the relevant patent filings. (*Id.* ¶¶ 50–65.) Ultimately, the USPTO issued the patents without listing Sywula as an inventor. (*Id.* ¶¶ 49–71, 83, 86, 89.) The parties' business relationship has since devolved, and they are litigating three related lawsuits.

#### 1. Northern District Action

Teleport filed suit first. The company and its subsidiary, Northern Lights, sued Sywula in the Northern District of California, alleging he breached several agreements and misappropriated the entities' intellectual property. *Teleport Mobility Inc. v. Sywula*, 21-cv-00874-SI (N.D. Cal. filed Feb. 3, 2021). Judge Susan Illston entered a preliminary injunction that, among other things, enjoined Sywula from deleting or limiting access to the companies' files and networks and required the parties to preserve certain evidence. *Id.*, ECF No. 30. Sywula then successfully moved to compel arbitration of the Northern District Action. *Id.*, ECF No. 49. In June 2021, Judge Illston left the injunction in place and stayed the case pending arbitration. *Id.*

#### 2. Rescission Action

Several months later, Sywula filed an action in San Diego County Superior Court. *See Sywula v. DaCosta*, No. 21-cv-01456-BAS-AGS, 2022 WL 910217, at *2–3 (S.D. Cal. Mar. 29, 2022) (resolving motion to remand). His initial state court complaint raised seventeen claims, including for breach of the Inventorship Agreement, rescission of the

Inventorship Agreement, conversion, failure to pay wages, and declaratory relief. *Id.* at *2. The gist of Sywula's claims is that the defendants wrongly tried "to run him out of the Teleport business and deny him the benefits of the invention that he created and rightfully owns." *Id.* at *3. Among other things, Sywula asked for a determination that the Invention Agreement "is rescinded and that Plaintiff had and has no obligations under the [agreement] at any time including presently and moving forward." *Id.*

Teleport and Northern Lights removed the Rescission Action, alleging a federal issue existed because Sywula's declaratory relief claim concerned inventorship of patents. *Sywula*, 2022 WL 910217, at *3. Sywula filed a First Amended Complaint that overhauled the declaratory relief claim to expressly seek relief based on rescission of the Inventorship Agreement—a matter governed by state law. *Id.* Shortly after this amendment, Sywula moved to remand the Rescission Action. *Id.*

This Court granted the motion to remand. *Sywula*, 2022 WL 910217, at *4–12. In navigating a sequence of procedural issues, the Court concluded Sywula's amended complaint did not raise a federal issue:

> Instead of seeking a determination of inventorship—a federal issue— Sywula asks the Court to determine an issue of state contract law—whether the Invention Agreement should be rescinded in light of Defendants' failure to pay him. In other words, Sywula invokes state law to undo the agreement's broad assignment of intellectual property to Teleport.
>
> This change is consequential. "[Q]uestions of patent ownership are determined by state law." Indeed, state law determines whether the Invention Agreement should be undone for failure of consideration. It follows that this claim does not arise under federal law.

*Id.* at *7 (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808–09 (1988); *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1327 (Fed. Cir. 2009); and others). The Court then declined to retain supplemental jurisdiction over Sywula's medley of state law claims and remanded them to state court. *Id.* at *10–11.

### 3. This Inventorship Action

Around the same time he filed the Rescission Action, Sywula filed this case raising a claim for correction of patent inventorship under 35 U.S.C. § 256. (Compl., ECF No. 1.) Teleport responded with a motion to dismiss, arguing Sywula lacked standing to pursue this action and, alternatively, the case should be transferred to the Northern District in light of the first-filed Northern District Action. (ECF No. 8.)

Sywula moved for a temporary restraining order and a preliminary injunction. (ECF No. 9.) Ultimately, at a hearing, the Court reasoned Sywula had not shown a likelihood of success on his inventorship claim because he lacks standing. In considering whether he had standing on financial grounds, the Court explained Sywula had assigned away the rights to his claimed inventions, and he could not undo those assignments in federal court through an inventorship claim. The Court was also unconvinced that Sywula had standing in light of any professional or reputational harm. The Court reasoned his allegations on this point are largely conclusory and speculative. Hence, the Court denied the request for preliminary relief.

In the meantime, Sywula filed a First Amended Complaint. (FAC, ECF No. 15.) Teleport again moved to dismiss on standing grounds and to transfer venue, which is the motion before the Court. (Mot., ECF No. 25.) Sywula opposes (Opp'n, ECF No. 28), and Teleport replies (ECF No. 30). The Court finds Teleport's motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L. R. 7.1(d)(1).

## III. Legal Standard

Federal courts are limited to hearing "actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). This limitation means the plaintiff must have standing to sue. *Id.* at 338. To plead standing, a plaintiff must allege the irreducible constitutional minimum of: (1) an injury in fact via "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation—the injury is "fairly traceable to the challenged action of the

defendant"; and (3) redressability—it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560−61 (1992) (internal citations and quotations omitted).

Under Federal Rule of Procedure 12(b)(1), a party may move to dismiss a claim based on lack of subject matter jurisdiction, including the absence of standing. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010). A Rule 12(b)(1) challenge to jurisdiction may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction, whereas in a factual challenge, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke jurisdiction. *Id*. "In response to a factual attack, [the non-moving party] must present 'affidavits or any other evidence necessary to satisfy [its] burden of establishing that the court, in fact, possesses subject matter jurisdiction.'" *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016) (quoting *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009)).

## IV. Analysis

Teleport brings a factual attack under Rule 12(b)(1) on Sywula's standing to bring his inventorship claim. (Mot. 7:25–8:21.) Like any litigant seeking to invoke federal jurisdiction, "a plaintiff seeking correction of inventorship under [35 U.S.C.] § 256 can pursue that claim in federal court only if the requirements for constitutional standing— namely injury, causation, and redressability—are satisfied." *Larson*, 569 F.3d at 1326 (citing *Chou v. Univ. of Chi.*, 254 F.3d 1347, 1358 (Fed. Cir. 2001)).

Pointing to the Consulting and Invention Agreements, Teleport submits "Sywula has no right to request a correction of inventorship of any of the patents-in-suit" because he assigned away his rights. (Mot. 8:22–25; *see also id.* 6:6–21.) Teleport also correctly argues that because its motion disputes some of Sywula's standing allegations, the Court is not bound by those contested allegations. *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993); *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378

- 7 -

(Fed. Cir. 2012); *see also Max Sound Corp. v. Google, Inc.*, 147 F. Supp. 3d 948, 952 (N.D. Cal. 2015) (considering a Rule 12(b)(1) factual attack targeting the plaintiff's standing to enforce a patent). This Court "must satisfy itself that there is a factual basis for it to exercise jurisdiction, and in doing so it 'may review evidence extrinsic to the pleadings, including affidavits and deposition testimony.'" *See 3M Co.*, 673 F.3d at 1378 (quoting *Cedars-Sinai*, 11 F.3d at 1584). The Court thus turns to Sywula's standing arguments.

### A. Concrete Financial Interest

Sywula first responds to Teleport's challenge with the argument that he has a financial interest in the correction of the patents that confers standing. (Opp'n 3:17–7:10.) A putative inventor has standing to pursue a Section 256 suit if he establishes that he owns the patents. *See Larson*, 569 F.3d at 1326. Although ownership is sufficient, it "is not a prerequisite for a putative inventor to possess standing to sue to correct inventorship." *Chou*, 254 F.3d at 1358; *see also Larson*, 569 F.3d at 1326 ("After surveying our own case law, we declined to hold that a plaintiff in an action under [Section 256] must have an ownership interest at stake in the suit to have standing."). Therefore, in a line of cases, the Federal Circuit sought to define what lesser interest is enough. *See Larson*, 569 F.3d at 1319; *Chou*, 254 F.3d at 1351; *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1571–72 (Fed. Cir. 1997). Those cases establish that a putative inventor who does not own the patents nevertheless can pursue a Section 256 action if he has a "concrete financial interest in the correction of the patents." *Larson*, 569 F.3d at 1321, 1325–28; *see also Chou*, 254 F.3d at 1358.

<u>Invalid Assignments</u>. Sywula claims he has a concrete financial interest in correcting the patents because the Consulting and Invention Agreements "are invalid due to failure of consideration." (FAC ¶ 73.) He also argues "Teleport does not dispute in the instant motion that it failed to compensate Sywula for his labor under the relevant contracts," making them invalid. (Opp'n 5:10–14.)

The Federal Circuit in *Larson* and *Jim Arnold Corp.* rejected a nearly identical argument. In *Jim Arnold Corp.*, a plaintiff who assigned all his patent rights sued for patent

- 8 -

21cv1450

infringement and sought to rescind the assignments. 109 F.3d at 1569–71. After reiterating that questions of patent ownership are determined by state law, the Federal Circuit explained that the plaintiff lacked standing to pursue his infringement claim because, "absent judicial intervention to change the situation," he did not have an ownership interest in the patents. *Id.* at 1572.

Similarly, in *Larson*—an inventorship action—the plaintiff assigned all rights and title to the subject patents to his employer, but claimed that those assignments were void. 569 F.3d at 1322–23. Finding that the reasoning of *Jim Arnold Corp.* applied with equal force in the inventorship context, the Federal Circuit concluded the plaintiff's "financial stake in the patents is contingent on him obtaining relief that a federal court has no jurisdiction under [Section 1338] to provide," namely, voiding the subject assignments. *Id.* at 1327. Put differently, the plaintiff in *Larson* lacked standing "unless and until he regains title to the patents." *Id.*

The same reasoning applies here. The Consulting and Invention Agreements cover the patents. Sywula alleges those contracts and their assignments are invalid, but he cannot obtain that relief in this case. Indeed, as mentioned above, he is litigating the Rescission Action to undo the assignments. Hence, Sywula lacks standing to correct inventorship on this ground "unless and until he regains title to the patents." *See Larson*, 569 F.3d at 1327; *see also, e.g.*, *Trend Micro Inc. v. RPost Holdings, Inc.*, No. 13-CV-05227-WHO, 2014 WL 1365491, at *8 (N.D. Cal. Apr. 7, 2014) ("A party does not have standing based on the possible rescission of an assignment agreement.").

<u>Equity Stake</u>. Sywula also tries to show a concrete financial interest in the correction of the patents based on his 48% equity stake in Teleport—the entity that owns the patents. (FAC ¶ 38.) Courts addressing this issue, however, have held that ownership of stock in an entity that owns the patents does not constitute a "concrete financial interest sufficient to confer standing." *Eastwood v. Molecular Defs. Corp.*, 373 F. Supp. 3d 502, 507–08 (S.D.N.Y. 2019); *see also Hall v. Cargill, Inc.*, 02-cv-156 (S.D. Ga. May 24, 2005) (finding that shareholder of company owning patents lacked standing because "[t]he rise and fall of

- 9 -

21cv1450

infringement and sought to rescind the assignments. 109 F.3d at 1569–71. After reiterating that questions of patent ownership are determined by state law, the Federal Circuit explained that the plaintiff lacked standing to pursue his infringement claim because, "absent judicial intervention to change the situation," he did not have an ownership interest in the patents. *Id.* at 1572.

Similarly, in *Larson*—an inventorship action—the plaintiff assigned all rights and title to the subject patents to his employer, but claimed that those assignments were void. 569 F.3d at 1322–23. Finding that the reasoning of *Jim Arnold Corp.* applied with equal force in the inventorship context, the Federal Circuit concluded the plaintiff's "financial stake in the patents is contingent on him obtaining relief that a federal court has no jurisdiction under [Section 1338] to provide," namely, voiding the subject assignments. *Id.* at 1327. Put differently, the plaintiff in *Larson* lacked standing "unless and until he regains title to the patents." *Id.*

The same reasoning applies here. The Consulting and Invention Agreements cover the patents. Sywula alleges those contracts and their assignments are invalid, but he cannot obtain that relief in this case. Indeed, as mentioned above, he is litigating the Rescission Action to undo the assignments. Hence, Sywula lacks standing to correct inventorship on this ground "unless and until he regains title to the patents." *See Larson*, 569 F.3d at 1327; *see also, e.g.*, *Trend Micro Inc. v. RPost Holdings, Inc.*, No. 13-CV-05227-WHO, 2014 WL 1365491, at *8 (N.D. Cal. Apr. 7, 2014) ("A party does not have standing based on the possible rescission of an assignment agreement.").

<u>Equity Stake</u>. Sywula also tries to show a concrete financial interest in the correction of the patents based on his 48% equity stake in Teleport—the entity that owns the patents. (FAC ¶ 38.) Courts addressing this issue, however, have held that ownership of stock in an entity that owns the patents does not constitute a "concrete financial interest sufficient to confer standing." *Eastwood v. Molecular Defs. Corp.*, 373 F. Supp. 3d 502, 507–08 (S.D.N.Y. 2019); *see also Hall v. Cargill, Inc.*, 02-cv-156 (S.D. Ga. May 24, 2005) (finding that shareholder of company owning patents lacked standing because "[t]he rise and fall of

infringement and sought to rescind the assignments. 109 F.3d at 1569–71. After reiterating that questions of patent ownership are determined by state law, the Federal Circuit explained that the plaintiff lacked standing to pursue his infringement claim because, "absent judicial intervention to change the situation," he did not have an ownership interest in the patents. *Id.* at 1572.

Similarly, in *Larson*—an inventorship action—the plaintiff assigned all rights and title to the subject patents to his employer, but claimed that those assignments were void. 569 F.3d at 1322–23. Finding that the reasoning of *Jim Arnold Corp.* applied with equal force in the inventorship context, the Federal Circuit concluded the plaintiff's "financial stake in the patents is contingent on him obtaining relief that a federal court has no jurisdiction under [Section 1338] to provide," namely, voiding the subject assignments. *Id.* at 1327. Put differently, the plaintiff in *Larson* lacked standing "unless and until he regains title to the patents." *Id.*

The same reasoning applies here. The Consulting and Invention Agreements cover the patents. Sywula alleges those contracts and their assignments are invalid, but he cannot obtain that relief in this case. Indeed, as mentioned above, he is litigating the Rescission Action to undo the assignments. Hence, Sywula lacks standing to correct inventorship on this ground "unless and until he regains title to the patents." *See Larson*, 569 F.3d at 1327; *see also, e.g.*, *Trend Micro Inc. v. RPost Holdings, Inc.*, No. 13-CV-05227-WHO, 2014 WL 1365491, at *8 (N.D. Cal. Apr. 7, 2014) ("A party does not have standing based on the possible rescission of an assignment agreement.").

<u>Equity Stake</u>. Sywula also tries to show a concrete financial interest in the correction of the patents based on his 48% equity stake in Teleport—the entity that owns the patents. (FAC ¶ 38.) Courts addressing this issue, however, have held that ownership of stock in an entity that owns the patents does not constitute a "concrete financial interest sufficient to confer standing." *Eastwood v. Molecular Defs. Corp.*, 373 F. Supp. 3d 502, 507–08 (S.D.N.Y. 2019); *see also Hall v. Cargill, Inc.*, 02-cv-156 (S.D. Ga. May 24, 2005) (finding that shareholder of company owning patents lacked standing because "[t]he rise and fall of

the value of . . . stock is simply too attenuated to establish a concrete financial interest in the . . . patents to confer standing"). The Court agrees. Even where an entity owns the patents, a non-controlling interest in the entity shows neither "ownership rights" in the patents themselves nor a "concrete financial interest in the *correction* of the patents." *See Larson*, 569 F.3d at 1321 (emphasis added).

Accordingly, Sywula's equity stake in Teleport is insufficient to show standing. And Sywula does not otherwise show standing based on a concrete financial interest in correcting the patents.

### B. Reputational Injury

Alternatively, Sywula's First Amended Complaint alleges he has standing to seek correction of the patents in light of reputational harm. Teleport argues "Sywula cannot bootstrap his way to Article III standing on the basis of any supposed reputational harm" because his allegations do not show a "concrete and particularized reputational injury." (Mot. 9:1–11:4, 12:4–13:3.) Consequently, Teleport challenges the sufficiency of Sywula's reputational injury allegations, but it does not submit evidence contradicting them. (*See id.*) The Court thus considers Teleport's Rule 12(b)(1) motion as a "facial attack" on this ground for standing, unlike Teleport's challenge above. *See Meyer*, 373 F.3d at 1039.

In *Shukh v. Seagate Technology LLC*, 803 F.3d 659, 663 (Fed. Cir. 2015), the Federal Circuit held a "concrete and particularized reputational injury can give rise to Article III standing" for a correction of inventorship claim. There, Dr. Shukh—"a leading scientist in the field of semiconductor physics"—claimed his former employer wrongly omitted him from six patents. *Id.* at 662. The court found the evidence could demonstrate the omission injured Dr. Shukh's reputation in two ways: (1) the omission injured "his reputation as an inventor in the field of semiconductor physics," and (2) the omission "contributed to his reputation for poor teamwork due in part to his accusations that others were stealing his work." *Id.* at 664. Further, Dr. Shukh presented evidence demonstrating "these reputational harms had economic consequences—namely, that Dr. Shukh was unable to

- 10 -

21cv1450

find employment after he was terminated from" his employer. *Id.* The Federal Circuit explained this "economic component" of the alleged reputational injury "is a concrete and particularized financial harm that suffices to create Article III standing." *Id*. at 667; *see also Kamdem-Ouaffo v. PepsiCo Inc.*, 657 F. App'x 949, 954 (Fed. Cir. 2016) ("But reputational injury alone is not sufficient; rather, it must be tied to economic consequences, such as loss of employment prospects."); *accord VariBlend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*, No. 18 CIV. 10758 (ER), 2019 WL 4805771, at *15 (S.D.N.Y. Sept. 30, 2019) (applying *Shukh* and dismissing claim where the plaintiff alleged neither "specific reputational harms" nor "how those might affect his economic position, either now or in the future"); *Feuss v. Enica Eng'g, PLLC*, No. CV 200-2034 (KM) (JBC), 2021 WL 1153146, at *4 (D.N.J. Mar. 26, 2021) (similarly applying *Shukh* and dismissing reputational injury claim that lacked sufficient allegations).

Sywula's First Amended Complaint includes two items concerning reputational injury. First, Sywula alleges he suffered a reputational injury because Teleport has made diminishing statements "that are harmful to Sywula's credibility as a reputable software engineer who works for Intel, one of the world's largest multinational technology companies." (FAC ¶ 75.) Second, Sywula alleges conduct from his ongoing dispute with DaCosta, including police reports and a civil harassment restraining order filed against him in Santa Clara County, have "caused serious, irreparable damage to Sywula's reputation." (*Id.* ¶ 76.)

The Court is unpersuaded that these allegations demonstrate a reputational injury that confers standing under Section 256. First, Sywula does not plausibly allege that a reputational injury stemming from police reports and a state court civil restraining order is fairly traceable to the omission of his inventorship. Nor do his allegations plausibly demonstrate a favorable ruling in this case would ameliorate that alleged injury. (*See* FAC ¶ 76.)

Second, Sywula's factual allegations do not establish a concrete and particularized injury. When generously construed, these allegations state an injury that is comparable to

the first two items of reputational harm considered in *Shukh*: injury to Sywula's reputation in his field of work and a negative reputation arising from his claim that Teleport wrongly omitted him from the patents. (*See* FAC ¶ 75.) *See* 803 F.3d at 664–66. Missing, however, are any allegations concerning economic harm or other concrete consequences, such as loss of employment prospects or other opportunities. Sywula worked at Intel before taking on the side project that led to this dispute, and he still works there now. (FAC ¶ 15.) By comparison, Dr. Shukh had been unemployed for years, he claimed a hiring manager at a potential employer discussed negative rumors about him, and Dr. Shukh alleged another engineer told him he would never get hired at a certain company because of his negative reputation. *Id.* at 661–62, 667. And that "inability to obtain employment" was "a concrete and particularized financial harm that suffices to create Article III standing." *Id.* at 667. Sywula's limited factual allegations do not demonstrate anything more than a nebulous reputational injury. *See Kamdem-Ouaffo*, 657 F. App'x at 954; *see also Pedersen v. Geschwind*, 141 F. Supp. 3d 405, 417 (D. Md. 2015) (finding lack of standing where the plaintiff did "not identify a single instance in which he has been . . . deprived of any opportunity whatsoever because of [the inventorship] error" and pointed to "no actual financial loss, no forfeited teaching or research opportunities, nor even an uncomfortable conversation with a colleague"). The Court therefore concludes he does not plead sufficient facts showing standing for his Section 256 claim on reputational grounds.

In sum, Sywula does not own the subject patents because he assigned away his rights involving them. He lacks an otherwise sufficient financial interest in correcting the patents, and he does not allege a particularized reputational injury involving them. Thus, the Court concludes he lacks standing to bring an inventorship claim against Teleport. *See Larson*, 569 F.3d at 1327; *Shukh*, 803 F.3d at 667; *Kamdem-Ouaffo*, 657 F. App'x at 954. For the same reasons, he lacks standing to bring a claim against the individual Defendants, DaCosta and Coletti.

## V. Conclusion

In light of the foregoing, the Court **GRANTS** Teleport's Motion to Dismiss (ECF No. 25) and **DISMISSES WITHOUT PREJUDICE** the First Amended Complaint. *See Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1036 (9th Cir. 2004) (providing a dismissal based on lack of subject matter jurisdiction should be without prejudice). If Sywula chooses to file a Second Amended Complaint addressing his standing, he may do so no later than **August 10, 2022**. The Court's grant of leave to amend is limited to Sywula's allegations concerning standing based on reputational injury. If Sywula does not file an amended pleading, the Clerk is directed to close this case.

**IT IS SO ORDERED.**

**DATED: July 25, 2022**

Hon. Cynthia Bashant
United States District Judge